**UNITED STATES of America**

v.

**David HECKLER et al., Defendants.**

**No. 74 Cr. 1126 (HFW).**

United States District Court,
S. D. New York.

June 21, 1976.

Curtis, Mallet-Prevost, Colt & Mosle, New York City by Peter K. Leisure, New York City, of counsel, for David Heckler, Henry J. Heckler, Paul Greenberg, and Heckler Electric Co.

Levy & Platt, New York City by Ronald Platt, New York City, of counsel, for Herbert A. Kozlow.

## OPINION

WERKER, District Judge.

Defendants have moved for an order pursuant to rules 12 and 48 of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments of the United States Constitution dismissing the indictment herein on the grounds

(1) that the government delayed presenting evidence to the grand jury in this case for a period of one and a half years and that such delay resulted in substantial and irreparable prejudice to the defendants, and

(2) that the government unjustifiably and contrary to the standards set forth in Rule 6(e) of the Federal Rules of Criminal Procedure sealed the indictment upon its filing for a period in excess of thirteen months, and that during the period in which the indictment was under seal the defendants suffered incalculable and irreparable prejudice to their defense.

The first count of the indictment herein charges David Heckler, Henry J. Heckler, Heckler Electric Co. (hereinafter referred to collectively as the "Heckler defendants") and Herbert A. Kozlow with a conspiracy to defraud the State of New York and the Health and Mental Hygiene Facility Improvement Corporation ("Mental Hygiene Corporation") by filing a false claim for additional work done in connection with the construction of the Bronx Children's Psychiatric Hospital ("Hospital") and with use of the mails for that purpose in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 371.

The second count in the indictment charges the Heckler defendants and Kozlow with obtaining money from the State and the Mental Hygiene Corporation by fraud contrary to 18 U.S.C. §§ 1341 and 2.

Count three charges Paul Greenberg with misprision of a felony under 18 U.S.C. § 4.

The facts insofar as they are relevant to this decision are as follows. Heckler Electric Co. is an electrical contracting firm

wholly-owned by David Heckler, its president. Henry J. Heckler was a vice president of the firm during at least a part of 1969 and is the son of David Heckler. Herbert A. Kozlow is an architect who was until about January 3, 1969 employed by Urbahn Associates, the architects on the Hospital job. Tizian Associates, Inc. was hired by Urbahn as the engineering consultant for this job. Allen Keller was a professional engineer and an employee of Tizian.

The first count recites that the acts of the defendants took place from March 1969 to and including January 1970. The overt acts are said to have occurred from April 2, 1969 to December 3, 1969. The construction of the Hospital began sometime in 1967. The electrical work is claimed by defendants to have been about 95% completed by the end of 1968 and did not involve any significant amount of work in 1969 and this is not disputed by the government. The Heckler corporation filed a claim on April 2, 1969 for $64,000 for additional work which it had performed before 1969. The senior engineer of Heckler on this job was John Yellin. He left the employ of Heckler in February 1969. Richard Muffoletto apparently worked with him and succeeded him. Yellin died in or about March 1972. On June 5, 1969 Urbahn requested Tizian to make an inspection of the claimed additional work. Tizian was to verify that work was actually done, the reasonable value of materials used, and whether or not the work done was within the scope of the contract or whether it was work for which Heckler was to be paid additional sums. Tizian assigned Keller to make the inspection, and he and one William J. Creen, an employee of Urbahn who was not a licensed engineer, met with Richard Muffoletto, who was then an employee of Heckler, on the job site and made the inspection. Keller reported that "We find the lengths of conduits and labor units as submitted by the Contractor reasonable" by letter dated June 5, 1969. Creen's letter report dated June 6, 1969 substantively confirmed Keller's report but also stated "we do not feel that our investigation substantiates the complete amount of Heckler Electric's claim."

Muffoletto would apparently testify in regard to this inspection that by design he took Keller to lunch where Keller had five martinis and ate no food, that Keller's inspection consisted of looking at only one location on the site and that Muffoletto then took him home. Keller has since died in March 1975. Muffoletto after his employment with Heckler Electric Co. became president of Mansfield Contracting Corporation ("Mansfield") and obtained contracts for Rikers Island Correctional Facility. His contracts were thereafter cancelled by the City, Muffoletto claimed that the IUE Local 3 was harassing him because he was using Local 363 of the Teamsters on that job. This was in January 1973. Apparently through these circumstances Muffoletto contacted the Federal authorities after Mansfield in March 1973 had commenced anti-trust actions alleging civil and criminal violations of federal laws.

The records of Heckler Electric Co. were subpoenaed by the United States Attorney in the Southern District of New York on April 6, 1973 and by the Antitrust Division of the Justice Department on November 1, 1973. Again on November 26, 1975, a year after the indictment herein had been filed, the United States Attorney subpoenaed the records with respect to the Hospital job.

The transactions underlying the charges made occurred primarily in April, May and June of 1969. The last overt act is alleged to have occurred on December 3, 1969. The indictment herein was filed on November 27, 1974, less than one month prior to the expiration of the statute of limitations. It was unsealed on January 26, 1976 almost fourteen months later.

While it may be true that the government had an on-going investigation into the contract practices of various construction companies in the City of New York and into the activities of various employees of the City and State, I do not find justification for the delay, either in the return of the indictment or the unsealing of the papers which have been furnished to me. What I have found is a lack of evidence that the

matters before this court would have in any way affected the course of that investigation had the indictment been returned and unsealed earlier.

I find it difficult to believe that the government was not in a position to bring this indictment before the expiration of approximately one year and seven months after it had subpoenaed the records of Heckler. The prejudice to defendant Kozlow is apparent. He left the employ of Urbahn in January 1969 and has been employed elsewhere since. His employer has moved during the intervening period and, even assuming that he could obtain the job records of his employer, he has been informed that some of them have been destroyed. It defies reason to expect a defendant to retain details as to dates, the substance of conversations or other material after the expiration of seven years from the date of the acts alleged. The same is true of the Heckler defendants. But these defendants have demonstrated other sources of prejudice aside from the erosion of memory. Tizian's representative, Keller, who was sent to check Heckler's claim for additional material and labor has died. He, Creen and Muffoletto were the witnesses to the key transaction at issue, i. e., the inspection. These defendants should not be penalized for the sloth of the government nor for choices which the government made. In November 1974 the government by sealing the indictment deliberately made a choice to delay prosecution of this indictment although it knew or should have known that each of the Heckler defendants was present within the jurisdiction and subject to arrest. That choice deprived defendants of a witness who was in a position to substantiate the bona fides of their claim for additional work and material and to contradict the testimony of Muffoletto as to what transpired on June 5, 1969. Furthermore, the testimony of Creen who was not an engineer does not compensate for the loss of Keller as a witness.

*United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) in which the Supreme Court declined to dismiss an indictment on the grounds of pre-indictment delay does not control this case because there was no showing of prejudice arising out of the pre-indictment delay. The Court expressly excluded from the opinion what their determination would be in a pre-indictment delay situation where there was an actual showing of prejudice to a defendant. The Supreme Court indicated that:

"To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." *Id.* at 325, 92 S.Ct. at 466.

Although the Supreme Court has indicated that "no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution," *Marion, supra* at 324, 92 S.Ct. at 465, I am of the opinion that both the pre-indictment delay and the post-indictment delay, which resulted from both the pre-indictment delay itself and from the unwarranted sealing of the indictment, have substantially and grievously affected the defendant's opportunity to defend against the charges made.

The sealing of the indictment extended the statute of limitations for a period of more than twelve months. I am persuaded that the reasoning in *United States v. Sherwood,* 38 F.R.D. 14 (D.Conn. 1964), *aff'd sub nom., United States v. Doyle,* 348 F.2d 715 (2d Cir.), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965) is correct. When the defendants are available the government may not seal an indictment for more than a reasonable time after the statute of limitations has expired. A period of more than twelve months is not reasonable.

The government claims that in order to make out a due process claim of pre-indictment delay in this Circuit there must be not only actual prejudice but also intentional delay to gain a tactical advantage, citing *United States v. Eucker,* 532 F.2d 249 (2d Cir. 1976). The holding of the court in *Eucker* was that the defendant had waived any pre-indictment delay claims by failing to move in the district court. This disposed

of the case. The additional language from *United States v. Eucker* at 255 that the court would be,

> "disinclined to reduce the period of limitations prescribed by Congress in the absence of some proof that the Government utilized the delay as 'an intentional device to gain tactical advantage over the accused' and that defendant was prejudiced thereby. *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 481 (1971),"

is dicta. *Marion* in my opinion need not be read to require both actual prejudice and intentional delay on the part of the government to gain a tactical advantage before an indictment will be dismissed. The issue rather is whether the prejudice of the defendant was so substantial as to deprive him of due process. Furthermore, the decision of the government to seal this indictment in November 1974 was certainly an intentional act by which it gained a tactical advantage to the prejudice of defendants, and the government should be charged with that gain.

Since the misprision count against Greenberg is dependent upon the substantive counts relating to the fraud against the State of New York which I have dismissed against the other defendants, this count against Greenberg must also necessarily be dismissed. Moreover, proof of a felony in this case would depend upon a decision by a fact finding body, that such a fraud took place, and since by reason of the government's delay the jury would not have available to it the testimony of essential transactional witnesses, the third count in the indictment charging misprision of a felony would have to be dismissed in any event.

It is also doubtful whether the misprision count could stand independently. The government contends that venue here is proper on account of the fact that venue lies in the place where a report of the commission of the felony to the proper authorities should have been made and that such a report should have been made in the Southern District of New York where the felony was committed. Neither statute nor case law however sets forth this requirement,[1] and the defendant Greenberg therefore cannot be charged with this crime in this district in the absence of prior notice of such law. *Bratton v. United States,* 73 F.2d 795 (10th Cir. 1934) states only that venue lies in the place where a report should have been made to the authorities but does not go so far as to state that that district is where the felony had been committed. I do not know how an individual could be expected to know where to make a report if neither the government, defendant's counsel, nor the court have been able to ascertain that requirement. The analogy drawn by the government to income tax cases is inapposite because the Internal Revenue Code specifies the place where returns are required to be filed. 26 U.S.C. § 6091 (1971). The misprision of a felony statute appears to be applicable only in a limited number of cases where the place of filing or reporting is specified by law.

The indictment is dismissed. The several motions with respect to discovery are mooted by this dismissal and will be so endorsed.

SO ORDERED.

---

1. The reason for the lack of clarity on this point in the case law may be attributed to the paucity of prosecutions under that statute. In *Bratton v. United States,* the Court of Appeals noted in 1934 that the predecessor statute to 18 U.S.C. § 4 "has been before the court but twice in the 144 years of its life." 73 F.2d 795, 797 (10th Cir. 1934).