UNITED STATES of America, Appellee,

v.

Aaron WATSON, Robert Whitley, and John Muse, Appellants.

Nos. 439, 491 and 513, Dockets 78–1296 to 78–1298.

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1979.

Decided April 30, 1979.

Petition for Rehearing June 18, 1979.

Decided Oct. 9, 1979.

14. *See* note 4 and accompanying text *supra.*

Before FRIENDLY, SMITH and OAKES, Circuit Judges.

### ORDER

It is hereby ORDERED that the earlier vote of this panel denying the Government's June 18, 1979, petition for rehearing is vacated, and a revised opinion is substituted for the original panel opinion decided April 30, 1979, *United States v. Watson,* 599 F.2d 1149 (2d Cir. 1979).

■■■ The revisions from the original opinion are as follows:

1. 599 F.2d at 1154. Strike last sentence in third paragraph and in lieu thereof insert the following:

But when the defendant can show substantial actual prejudice, the indictment must be dismissed, for even a legitimate prosecutorial interest is then insufficient to effectuate statute of limitations policies.

2. Add the following three paragraphs after the foregoing insertion:

Ordinarily, when the limitations period has passed, "there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced," *United States v. Marion, supra,* 404 U.S. at 322, 92 S.Ct. at 464, and so we bar prosecution—however strong the prosecutorial interest may be. There is a narrow exception to this rule where the prosecution has delayed beyond the limitations period in unsealing a timely indictment. In such a case, we do not give force to the presumption and, if the defendant does not demonstrate actual prejudice, we tolerate delay justified by a legitimate prosecutorial need in unsealing the indictment. But the Government is not relieved of the statutory recognition that actual commencement of prosecution after passage of the limitations period may prejudice the defendant. Accordingly, prosecution should be barred if the defendant can show "substantial, actual prejudice" arising at any time prior to the post-limitations unsealing of an indictment. In such a situation, as in the ordinary case of an untimely indictment, even a strong prosecutorial interest should not toll the statute.

The Government argues that considering prejudice occurring before the limitations period has expired leads to anomalous results. For example, if a sealed indictment is filed one day before the statute has run and unsealed one day after, the indictment can be dismissed if the defendant suffered substantial prejudice even before the sealed indictment was returned. But we do not agree that such an example is an "anomaly" that casts doubt upon our reasoning. What the example does show is that the statute of limitations embodies a strict policy against delay that might prejudice the defendant. It is not "anomalous" that if the *sealed* indictment were filed one day after the limitations period had expired, the indictment would be dismissed, even though it would not necessarily be dismissed if filed one day earlier. Indeed, in the ordinary case where the indictment is

never sealed but is returned just outside the limitations period, we do not even inquire into prejudice but simply dismiss the indictment. By contrast, our test for sealed indictments requires dismissal only if the defendant can show substantial, actual prejudice.

It is true that in evaluating claims of prejudice due to alleged unconstitutional pre- and post-indictment delay, we have not considered prejudice to a defendant not arising during or as a result of the period of alleged delay. *See United States v. Lai Ming Tanu*, 589 F.2d 82, 92 (2d Cir. 1978) (Oakes, J., concurring) (post-indictment delay); *United States v. Cheung Kin Ping*, 555 F.2d 1069, 1072–73 (2d Cir. 1977) (preindictment delay). But in effectuating the policies of the statute of limitations we cannot limit our concern to prejudice shown clearly to have been caused by the delay after filing. If we are to grant the Government the benefit of a tolling of the limitations period, then we may properly impose a corresponding burden, namely, the risk of dismissal if the defendant has been prejudiced. But the quid pro quo is illusory if we consider only post-filing prejudice, a form of prejudice that the defendant need not show when an *ordinary* indictment is filed beyond the limitations period.

3. 599 F.2d at 1156 n. 4. Replace footnote with the following:

It is a premise of Judge Friendly's dissent, as his original opinion set forth, *United States v. Watson*, 599 F.2d 1149, 1158–59 & n. 1 (2d Cir. 1979) (dissenting opinion), that Muse did not suffer any prejudice by virtue of the lapse of time between the time that the indictment was returned, June 1, 1976, and the time that the indictment was unsealed, late September, 1977; as he put it originally, "Even if we make the charitable assumption that Muse in fact suffered a memory lapse on these items, there is nothing to show it had not occurred before June 1, 1976 ...." *Id.* at 1159. He went on to argue that this "defie[d] the teachings of psychology, as well as common sense." *Id.* In support he cited the psychological

literature, and particularly Ebbinghaus, relating to "memory declining along an asymptotic curve ...." *Id.* at n. 1. His revised dissent in response to the panel's opinion revised after petition for rehearing remakes the same "asymptotic curve" argument and adds that the district judge doubted whether any memory loss on the part of Muse had occurred and whether, if it had occurred, it did so during the post-limitations or sealing period. We do not think that judicial notice can be taken of the psychological "asymptotic curve" premise on which Judge Friendly's views are based. First, it does not sufficiently take into account "retroactive inhibition," *i.e.*, "interference; inhibition or obliteration of the old by the new," Redmount, *The Psychological Basis of Evidence Practices: Memory*, 50 J.Crim.L.C. & P.S. 244, 253–54 (1959). Second, it fails to distinguish between the learning process, perceptual processes and emotional processes, three "distinguishable" processes. *Id.* Ebbinghaus's pioneer work as well as the "asymptotic curve" studies which have confirmed that work relate to *learned* material, in Ebbinghaus's own case, nonsense syllables. *Id.* at n. 29. That is not what we are talking about here.

The additional point now made, that the trial judge said that "one either does or does not remember occurrences of this duration, of this extent for the rest of one's life"—parenthetically a statement taken from the sentencing minutes—may or may not be an accurate observation, but it is no more than an observation. What we do know is that, at the trial in April, 1978, the key factual issue from Muse's point of view was whether he had stopped doing business with Diamond and Egister before June 1, 1971, the cutoff date for the statute of limitations, or thereafter. There was no question but what he had done business in 1969 and 1970. His claim was that he had stopped doing so shortly before Diamond's New Jersey arrest for murder on February 1, 1971, after an argument with Egister and

Diamond lasting some fifteen minutes about some "bad merchandise," that is, "synthetic" heroin. Diamond claimed the conversation occurred shortly after his release on bail on May 16, 1971, and Egister claimed that it occurred either in late 1971, "right before the winter started," shortly after Diamond's release from jail in May, 1971, or in "early summer." True, some of Egister's testimony was tied to dates of Ali fights, but that specifically dealing with Muse was an event which occurred either in March, April, May, or sometime late in 1971, at the time of the Ali-Frazier fight (which was on March 8, 1971), at the time Diamond came out of jail, or right after he went into jail. Where in short, as here, the exact date of critical events was the very crux of the case (against Muse), the obvious dimming of memories on the part of both prosecution witnesses as well as the defendant that had occurred was in our view necessarily prejudicial. Because we consider that it is impossible to know when that prejudice occurred, we hold as a matter of policy in respect to the statute of limitations, for reasons stated in text, that there must be a dismissal as to Muse.

FRIENDLY, Circuit Judge (dissenting from the opinion on rehearing):

This case has had a peculiar procedural history. Within the period allowed by the court, the Government filed a persuasive petition for rehearing with a suggestion for rehearing *en banc*. When the majority of the panel denied the petition for rehearing, I requested a poll of the judges in active service on rehearing *en banc* because of the "exceptional importance" of the decision, F.R.A.P. 35(a), to the enforcement of criminal justice.[1] After a majority of the active judges voted for such rehearing, the majority of the panel vacated its order denying

the petition for rehearing and substituted a revised opinion. The principal changes are the jettisoning of the distinction between what is permitted in the way of sealing beyond the period of limitations if the Government shows a "strong" as compared with a merely "legitimate" prosecutorial interest, see 599 F.2d at 1155, and an attempt to answer the Government's devastating criticisms of including preindictment delay, concededly not itself entitling Muse to any relief in measuring the prejudice from the post-limitation continued sealing of the indictment. In my view the effect of the second opinion is even more damaging than that of the first.

Although I considered the distinction between a "strong" and a merely "legitimate" prosecutorial interest to be unworkable and unauthorized, see 599 F.2d at 1159, it at least afforded some opportunity for balancing the Government's need against the degree of prejudice to the accused. Under the new dispensation wherein the strength of the Government's need is irrelevant, if we were dealing here with crimes as serious as second degree murder, 18 U.S.C. § 1111, or kidnapping the President, 18 U.S.C. § 1751(b), and sealing the indictment beyond the period of limitations was clearly essential to apprehension of the accused, a court would be required to dismiss the indictment "if the defendant can show substantial, actual prejudice" even if this was incurred well before the sealed indictment was filed. Indeed under the major thrust of the opinion, namely, that there is an "irrebuttable presumption of prejudice" once the period of limitation has passed, this would be so even if the indictment was unsealed a few months after the statute had run and the prejudice, e.g., the death of an alibi witness, had occurred long before filing of the indictment. There must be something wrong with a view that could yield such a result.

---

1. See *United States v. Onassis*, 125 F.Supp. 190, 213 (D.D.C.1954) (Rule 6(e) "is important to criminal administration"). Although the reported cases discussing alleged prejudice with respect to indictments sealed pursuant to F.R. Cr.P. 6(e) are few, they are likely to be quite significant when they arise. They may involve

a situation where the Government justifiably fears that the particular defendant will flee or, as here, the existence of a large criminal enterprise in which the interconnected activities of many suspects necessitates secrecy with respect to all.

The majority properly concedes that the delay in filing the indictment gave Muse no claim to relief under *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). On my part, I can agree that, despite the absence of any such direction in F.R.Cr.P. 6(e), one of the policy considerations that underlies the statute of limitations "demands that the Government unseal the indictment as soon as its legitimate need for delay has been satisfied." 599 F.2d at 1154. The district judge found that this was done here and the majority does not say he was wrong. However, it imposes a further gloss that even in such a case a defendant is entitled to dismissal if he can show "substantial, actual prejudice" no matter how great the need for sealing was, and, what is necessary to the decision here, that in determining prejudice a court must consider the entire period since commission of the crime and not simply that after the period of limitation (or the filing of the indictment).

Neither authority nor reason supports this. The leading case on the point that an indictment is timely if "found" within the period of limitations although not unsealed until thereafter, speaks of prejudice "by the delay of 54 days in making public the indictment ..." *United States v. Michael,* 180 F.2d 55, 57 (3 Cir. 1949), *cert. denied,* 339 U.S. 978, 70 S.Ct. 1023, 94 L.Ed. 1383 (1950) (Maris, J.). Professor Wright's treatise likewise speaks of prejudice "by unnecessary delay in unsealing the indictment." 1 Federal Practice and Procedure § 110 at 200–01 (1969).[2] Neither of the district court decisions cited by the majority, 599 F.2d at 1155, suggests that the time before the lapse of the limitation period should be taken into account in determining prejudice; whatever precedential value or relevance these cases may have, they would seem to suggest the opposite, that only post-limitation prejudice should be considered. The Government also seems to me to be right in saying that the decision here is basically inconsistent with our recent holdings in *United States v. Lai Ming Tanu,* 589 F.2d 82, 92 (1978) (Oakes, J., concurring) and *United States v. Cheung Kin Ping,* 555 F.2d 1069, 1072–73 (1977). As a matter of reason, it would appear almost too clear for argument that, if our concern is with the sealing of an indictment beyond the period of limitations, our examination should be addressed to the effect on the accused of that delay and not of the delay in finding the indictment. It is not only anomalous but altogether indefensible to say that, if an indictment is found on the day before the statute of limitations has lapsed, a claim of prejudice from loss of memory during the five year period would be dismissed under *United States v. Marion, supra,* 404 U.S. at 321–22, 92 S.Ct. at 463–64, but if the indictment was originally sealed and was unsealed a day after the statute had run, the same claim would warrant dismissal. It is no answer that sharply different consequences from a matter of days may arise from the "bright line" statute of limitations itself. That is the result of the legislature's clear right to draw an arbitrary line for limitations purposes, and is no excuse for arbitrariness in a *judicial* product.

The majority seeks to escape all this by framing the issue in terms of a "tolling" of or an "exception" to the statute of limitations and quoting a statement in *United States v. Marion, supra,* 404 U.S. at 322, 92 S.Ct. at 464, that when the limitations period has passed, "there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced". The analy-

---

2. For present purposes it is not necessary to decide whether a court should consider prejudice arising during the entire period of sealing or only during the post-limitations period. *United States v. Michael, supra,* apparently considered the former period, although the difference of a mere four days between the options suggests that the issue did not detain the court. *United States v. Heckler,* 428 F.Supp. 269, 272 (S.D.N.Y.1976), on the other hand, specifically considered sealing "after the statute of limitations had expired." Perhaps what is required is a flexible standard according greater weight to prejudice in the post-limitations period but not ignoring that occurring pre-limitations but post-filing.

**20**

sis is fundamentally flawed. This is not a case of tolling the statute of limitations or creating an exception to it. As held in *United States v. Michael, supra,* the statute of limitations has been satisfied by the timely finding of the indictment. The question is what qualifications courts may properly place on F.R.Cr.P. 6(e), which, by virtue of the enabling act, 18 U.S.C. § 3771, is of equal dignity with the five-year statute of limitations, 18 U.S.C. § 3282. The reason why indictments not found within the statutory period must be dismissed is not because of an "irrebuttable presumption of prejudice" in a factual sense but because Congress has so directed. As has long been recognized, an "irrebuttable presumption" is not a rule of evidence but one of substantive law, see 9 Wigmore, Evidence § 2392 (3d ed. 1940); McCormick, Evidence § 342 at 804 (Cleary ed. 1972).[3]

The majority tells us that "If we are to grant the Government the benefit of a tolling of the limitations period"—which we are not doing—"then we may properly impose a corresponding burden, namely, the risk of dismissal if the defendant has been prejudiced."[4] While this may be unobjectionable with respect to prejudice arising in the period (or, more narrowly, the post-limitation period) after sealing, there is no basis for the following sentence, crucial to the decision here:

> But the quid pro quo would be illusory if we consider only post-filing prejudice, a form of prejudice that the defendant need not show when an *ordinary* indictment is filed beyond the limitations period.

As pointed out above, the reason why the defendant need not show prejudice when an indictment, ordinary or extraordinary, "is filed beyond the limitations period" is because Congress has so provided in 18 U.S.C. § 3282. Since Congress has given no directions against sealing a timely filed in-

dictment beyond the limitations period, any judicial gloss on F.R.Cr.P. 6(e) should be directly related to the possible abuse. Just what is "illusory" about limiting the consideration of prejudice to the period of the sealing (or the post-limitation portion of that period), I wholly fail to comprehend. On the contrary, the majority's position places an unnecessary and unjustified roadblock to the enforcement of the criminal law.

Some passages in revised footnote 4 might indicate that the majority is shifting toward a less rigorous standard than the text of the opinion indicates. Although the opinion says that the defendant need only show prejudice "at any time prior to the post-limitations unsealing," the footnote concludes: "*Because* we consider that it is impossible to know when that prejudice occurred, we hold ... that there must be dismissal as to Muse" (emphasis supplied). This suggests that a different result might follow if the time of prejudice could be more readily fixed, e.g., in the case of the death of an alibi witness. Although such a reading would make the result somewhat less objectionable, it is at odds with specific language in the text. Moreover, I see no reason why the defendant should not have the burden of showing that the prejudice occurred during the sealing period.

Unlike today's majority, courts, including this one, have generally been unresponsive to claims of prejudice arising from faded memory, and with good reason. As Judge Tone has recently written:

> A claim of faded memory, the veracity of which can rarely be satisfactorily tested, can be plausibly asserted in almost any criminal case in which the defendant is not charged within a few weeks, at most, after the crime. The possibility or likelihood of faded memory has not, however, been viewed as prejudice that requires dismissal of an indictment ...

---

3. It is worth quoting Professor McCormick's observation, *id.* at 802–03:

> One ventures the assertion that "presumption" is the slipperiest member of the family of legal terms, except its first cousin "burden of proof".

4. This "bitter with sweet" formulation ignores that, given Congressional sanction of F.R.Cr.P. 6(e), the "benefit" referred to has been conferred by Congress, not by us.

*United States v. Cowsen,* 530 F.2d 734, 736 (7 Cir.), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2227, 48 L.Ed.2d 831 (1976). See *United States v. Marion, supra,* 404 U.S. at 321–22, 92 S.Ct. at 463–64; *United States v. Foddrell,* 523 F.2d 86, 87–88 (2 Cir.), *cert. denied,* 423 U.S. 950, 96 S.Ct. 370, 46 L.Ed.2d 286 (1975); *United States v. Payden,* 536 F.2d 541, 544 (2 Cir.), *cert. denied,* 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976); *United States v. Quinn,* 540 F.2d 357, 362 (8 Cir. 1976). Indeed the district judge in this case, after observing not only Muse but other witnesses recounting the same events, doubted whether any memory loss had in fact occurred and, if it had, whether it occurred during the post-limitations or sealing period. As he concluded, "It just seems to me that one either does or does not remember occurrences of this duration, of this extent for the rest of one's life. It seems to me unlikely that events of this sort—a charge of this sort would be forgotten," a conclusion which, as pointed out in my original dissent, 599 F.2d at 1159 & n. 1, accords with the teachings of psychology.[5] Finally, the majority fails to note in its discussion of Muse's alleged memory difficulties that these did not relate at all to the events described in its footnote but to such mundane and usually well remembered facts as "the date that he changed apartments, the date that he was arrested on federal narcotics charges, the people whom he was asked to identify upon arrest, or the car that he was driving in 1970." 599 F.2d at 1155–56.

There are further troubles with the majority opinion which deserve a word. Although the opinion stresses that Muse took the stand whereas Watson and Whitley did not, 599 F.2d at 1155–56, I cannot see why the majority's rule should not apply equally to a defendant who asserts that he would have testified save for the fear of exposure of his defective memory—as Whitley later did by a petition for rehearing which was denied without explanation. Should courts be required, indeed do they have the capacity, to pass on such assertions? Also the majority gives only glancing mention to what I read to be the finding by the district judge, referred to above (App. 17a), that Muse did not suffer substantial prejudice from the *entire* period of delay, see page 5035–36, *supra.* The trial judge had an opportunity to see and hear Muse and observe the jury that we do not.

Since a substantially revised opinion has been substituted, I assume the Government will be entitled, if so advised, again to petition for rehearing and suggest that the case be reheard *en banc.* If it should do so, I will again request a poll of the judges in active service.

---

**5.** The "retroactive inhibition" theory cited by the majority in footnote 4 to the opinion on rehearing does not at all undermine the long-accepted psychological learning supporting the common sense view that memory declines along an asymptotic curve, see 599 F.2d 1159 n. 1; it purports to explain *how* memory loss occurs, but does not challenge the conventional wisdom as to when. The fact that Ebbinghaus' studies were performed with learned nonsense syllables for obvious laboratory control purposes does not detract from the validity of his widely accepted conclusions. I am at a loss to understand why we cannot take notice of a principle of psychology so long and widely accepted, clearly a "legislative fact", see Advisory Committee Note to Federal Rule of Evidence 201, still less how the majority can proceed on a self-generated theory of memory loss directly contrary to what has been the received learning for nearly a century.