**UNITED STATES**

**v.**

**Wayne HARRISON, Defendant.**

**No. 90 Cr. 891 (RPP).**

United States District Court,
S.D. New York.

May 13, 1991.

Otto Obermaier, U.S. Atty. by Sharon Davies, Asst. U.S. Atty., S.D.N.Y., New York City, for U.S.

Legal Aid Soc. by Ian S. Weinstein, Federal Defender Services Unit, New York City, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Wayne Harrison ("Harrison") moves pursuant to Rule 12 of the Federal Rules of Criminal Procedure for dismissal of the indictment against him on the ground that pre-indictment delay in bringing the prosecution violated his right to due process under the Fifth Amendment to the United States Constitution. Defendant requested that a hearing be held on the issue. Oral argument was heard on April 1, 1991, at which time counsel agreed that they would argue the motion based on a proffer made by the government instead of holding a hearing.[1]

For the reasons stated below, the motion is denied.

## BACKGROUND

Harrison was indicted in December, 1990, on a single count charging him with the embezzlement of $31,446 from Citibank between April 9, 1985 and April 15, 1985, in violation of 18 U.S.C. § 656. The investigation arose when Citibank became aware, in late April, 1985, of the loss of sixteen of a batch of one hundred blank cashier's checks, which had been issued to the Staff Banking Department of Citibank at 399 Park Avenue, New York, New York. Two of those sixteen checks had been negotiated through Washington Federal Savings & Loan, a bank in Washington, D.C., and deposited in a personal checking account under the name "Richard Wendale Winter" ("the Winter account") in late April, 1985. Citibank began an internal investigation of the missing checks and on May 29, 1985, notified the Federal Bureau of Investigation ("FBI") of the suspected theft. Tr. 6; Government's Memorandum of Law in Opposition to Motion to Dismiss, 2–3.

Harrison was a temporary employee of the Staff Banking Department and allegedly had used the desk from which the cashier's checks had been taken. Affidavit of Wayne Harrison, February 1, 1991, ¶ 4. On June 5, 1985, Harrison took a polygraph

---

1. References to pages of the transcript of oral argument will appear in this Opinion as "Tr. _."

examination at Citibank's request. He denied having any knowledge of the stolen checks but the polygraph results indicated otherwise. Harrison then allegedly told the polygraph examiner that he had taken the sixteen checks and had given two of them to a friend in Washington, D.C., adding that he had the other fourteen checks at home and would return them the next day. He allegedly repeated these admissions to an employee of Citibank's Security Department that day, but did not return the checks the next day. Government's Memorandum of Law, *supra*, 2–4. Those checks have never been returned or cashed. Tr. 36.

The government's proffer was directed to showing that there were justifiable investigative and administrative reasons for the delay in indicting Harrison. During or around May of 1985, sixteen personal checks were drawn on the Winter account. In June of 1985, the government issued a grand jury subpoena to Harrison for the purpose of obtaining handwriting exemplars, fingerprints and photographs of him, with which he complied. Tr. 19, 32; Affidavit of Wayne Harrison, February 1, 1991, ¶ 5. He did not make any statement at that time and was represented by counsel. Tr. 34–35. The FBI conducted handwriting and laboratory analyses of the two cashier's checks which had been deposited in the Winter account. It did not conduct laboratory analyses of the sixteen personal checks at that time. Tr. 19, 27–28. Some of the personal checks drawn on the Winter account were made out to "Cash" and others were made out to various persons. Tr. 22–23. Upon receiving those names, the FBI began to investigate those individuals, including determining if they were real or fictitious, interviewing some of them and conducting background checks on them.[2] Reports on the background checks were received by the FBI case agent from local FBI offices as late as September, 1986. The case agent also attempted to determine whether Richard Winter was a real or fictitious person and what his role was, if any. Tr. 17–26.

At some point between September, 1986 and November, 1987, the case agent handling the investigation was assigned to a case involving a major bank failure, which took up most of his time. In May, 1988, the case agent was transferred from the FBI's New York office to the FBI Academy; the case was reassigned to a different case agent. In August of 1988, the new case agent resigned from the office and the case was again reassigned to another case agent. In October, 1988, that agent met with prosecutors and it was determined that the investigation should continue. In March, 1989, the case was reassigned yet again to Special Agent Peter Grupe, whose affidavit is submitted in support of the government's argument. Tr. 26–28. Special Agent Grupe conducted further background investigation of Harrison and interviewed Harrison in June, 1989. The government alleges that Harrison recanted the 1985 admissions, stating that he had been confused by the polygraph examiner and thought the questions referred to personal checks of his own rather than Citibank's cashier's checks. Government's Memorandum of Law, *supra*, at 4. Between July, 1989 and November, 1989, laboratory analyses were performed for the first time on the personal checks drawn on the Winter account. Some persons whose names appeared on those checks were reinterviewed. Between November, 1989 and November, 1990, Special Agent Grupe was handling several other cases, including two which went to trial in that period. In November, 1990, a complaint was filed against Harrison and the instant indictment followed. Tr. 26–28.

## DISCUSSION

 Excessive pre-indictment delay may, under certain circumstances, violate a criminal defendant's Fifth Amendment right to due process. *United States v. Lovasco*, 431 U.S. 783, 788, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752 (1977). In *United States v. Elsbery*, 602 F.2d 1054 (2d Cir.1979), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979), the Second Circuit held

---

**2.** The government interviewed six persons during this time period. Tr. 23.

that to show a denial of due process because of pre-indictment delay, a defendant must show "actual substantial prejudice" to his right to a fair trial and also unjustifiable government conduct. 602 F.2d at 1059. Harrison states that both actual substantial prejudice and unjustifiable government conduct are present, but he also asserts that he does not have the burden to show both.

The law in this circuit after *Elsbery, supra*, is that to win dismissal of a case for delay, a defendant must show both actual substantial prejudice and unjustifiable government conduct, not one or the other; defendant's citations in support of his argument do not hold to the contrary. *See United States v. Long*, 697 F.Supp. 651, 657 (S.D.N.Y.1988); *United States v. Slochowsky*, 575 F.Supp. 1562, 1569 (E.D.N.Y. 1983).

### 1. Actual Substantial Prejudice

The Supreme Court has noted that the "primary guarantee against bringing overly stale criminal charges" is the applicable statute of limitations. *United States v. Marion*, 404 U.S. 307, 321, 92 S.Ct. 455, 463–64, 30 L.Ed.2d 468 (1971). In the present matter, the applicable statute of limitations is ten years from the date of commission of an offense under 18 U.S.C. § 656. 18 U.S.C. § 3293. The government asserts that the fact that this indictment has been brought within the ten-year limitations period undermines any showing of prejudice, in spite of the five and a half years which have elapsed between the theft, the ensuing grand jury subpoena of Harrison, and the indictment.

Harrison argues that he will be denied a fair trial because a potential witness, Michael Slade, has died in the years between the alleged offense and the indictment,[3] and because Harrison can no longer remember the events of 1985 or details which might be exculpatory, such as an alibi for any given date.

▬ The dimming of memories with the passage of time, without more, does not create actual substantial prejudice to the right to a fair trial which would warrant dismissal of a case for pre-indictment delay. *Elsbery, supra*, 602 F.2d at 1059. The Court is aware that the passage of time does affect witnesses' memories and it may be relevant to the credibility of their testimony. Defendant argues that the memories of witnesses as to, and his own ability to recall, his precise whereabouts on specific dates during the relevant time period are impaired by the delay, thereby preventing him from mounting an alibi defense. The same fact, however, also handicaps the government in that any prosecution witness who testifies, for example, that he or she met with Harrison, is vulnerable to challenge because of the time elapsed since the events at issue. Nor does the government's case appear to be premised on the defendant's presence in a particular place at a particular time so that an alibi would exonerate the defendant. Instead, it appears to be premised on expert testimony concerning handwriting and laboratory analyses of the checks. *See* Tr. 13, 27–28, 48–50. Given the respective burdens of proof, the prejudice against Harrison does not appear to be substantial.

Harrison had legal counsel and was aware that he was a suspect in June, 1985, Tr. 35, when he received the grand jury subpoena for a handwriting exemplar. He was on notice that the investigation concerned the specific time period between April, 1985 and early June, 1985, and that the investigation could extend to Washington, D.C. *See* Tr. 13. He and his counsel were thus aware of the significance of the defendant's whereabouts in that time period. Accordingly, the claim of substantial prejudice because of the impairment of memories about a possible alibi is based on a false premise, a lack of prior awareness of the significance of the defendant's whereabouts in May of 1985.

Defendant cites *United States v. Heckler*, 428 F.Supp. 269 (S.D.N.Y.1976) (district court dismissed case because defendants' rights to due process were violated by delay), but that case involved both pre-indict-

---

3. Slade died in July, 1989. Affidavit of Wayne Harrison, February 4, 1991, ¶ 11.

ment delay, the indictment having been brought less than one month before the expiration of the statute of limitations, and post-indictment delay, since the indictment was then sealed for another fourteen months. As a result, the indictment was not unsealed until more than a year after the expiration of the statute of limitations. 428 F.Supp. at 271–72. The *Heckler* decision was also based upon the death of a witness to the key transaction at issue (the inspection of a construction site), who had special knowledge not possessed by any other witness, because he was the engineer who conducted the inspection and reported on it. *Id.* The combination of these circumstances made the delays in *Heckler* substantially prejudicial to the defendants in a manner not apparent here.

Harrison also claims that he will be denied a fair trial because of his inability to call a witness who has died, Michael Slade. Slade was Harrison's brother-in-law. He was never interviewed by the FBI before his death nor was he identified as a suspect or co-conspirator by the government between May of 1985 and November of 1990 (when the complaint against Harrison was sworn). Tr. 29.

Harrison asserts that the government may present evidence that Slade received two checks from Harrison and that Harrison thus will be prejudiced by his inability to call Slade as a witness. There is no showing, however, that Slade would have or could have testified in a way helpful to defendant.[4] Any argument of prejudice on that premise is thus speculative. Indeed, the government maintains it had no information about Slade when it presented its case to the grand jury or when the indictment was returned against Harrison. Tr. 54–55. Slade is not named in the indictment or complaint as a co-defendant or co-conspirator. Furthermore, the government represented to the Court at oral argument that it did not consider Slade a co-conspirator, thus no statements of Slade will be used against Harrison. Tr. 55. With that representation and given the govern-

ment's representations that Slade was not a focus of the indictment, there is no showing of actual substantial prejudice.

### 2. Unjustifiable Government Conduct

Defense counsel states that the government's conduct is unjustifiable because the delay was unreasonable and highly negligent, and suggests that the government sought a tactical advantage by delay. Because defendant has failed to show "actual substantial prejudice," *Elsbery, supra,* at 1059, it is not necessary to address this claim to dispose of the motion.

■ At oral argument, the government proffered certain administrative factors which had contributed to delaying the investigation, including the transfer or resignation of several case agents who were, at different times, in charge of this investigation. The government also states that within the two months immediately preceding the indictment, its investigation has yielded new evidence of Harrison's role in the alleged theft which connects Harrison to the proceeds of the theft. Affidavit of Special Agent Peter Grupe, February 19, 1991, ¶ 3; Tr. 41–44. It is not clear that the government could not have obtained that evidence in 1985 or 1986, if it had, for instance, performed laboratory analyses of the sixteen personal checks at that time instead of in 1989. Bureaucratic oversight, however, or lack of proper case administration, does not rise to the level of conduct which justifies dismissing a criminal indictment.

Nor is there any showing that the government sought to gain, or did gain, any tactical advantage through deliberate delay. Defendant argues that the government gained a tactical advantage because the passage of time put pressure on Harrison to admit to the crime. The argument is not persuasive. Accordingly, there is no showing of improper government conduct sufficient to warrant dismissal.

---

**4.** It is equally possible that Slade's absence may benefit Harrison. *See Long, supra,* 697 F.Supp. at 657.

34

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is denied.

IT IS SO ORDERED.