UNITED STATES of America, Appellee,

v.

James W. ELSBERY,
Defendant-Appellant.

No. 859, Docket 79–1030.

United States Court of Appeals,
Second Circuit.

Argued April 10, 1979.

Decided June 25, 1979.

Donald E. Nawi, New York City (Leroy B. Kellam, St. Albans, N. Y., of counsel), for defendant-appellant.

Ronald G. Russo, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty. and Harvey M. Stone, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y., of counsel), for appellee.

Before OAKES and GURFEIN, Circuit Judges, and PIERCE, District Judge.*

GURFEIN, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York (Hon. Mark A. Costantino) convicting Dr. James W. Elsbery, after an eleven-day jury trial, on ten counts of making materially false statements in a matter within the jurisdiction of the United States Department of Health, Education and Welfare, in violation of 18 U.S.C. §§ 1001 and 1002. The defendant was acquitted on 16 other counts of mail fraud under 18 U.S.C. § 1341.[1]

The defendant is a professional educator. During the 1972–1973 and 1973–1974 school years, his wholly-owned company, Elsbery Systems Analysis, Ltd. (ESA), entered into nine contracts with the New York City Board of Education to evaluate programs for the disadvantaged. Five of the contracts were funded by the Department of Health, Education and Welfare; misstatements in connection with these federally-funded contracts were the grounds for the prosecution under 18 U.S.C. §§ 1001 and 1002. Each of the contracts was "cost-plus," meaning that ESA would be paid for the actual costs of performance plus a profit, with a maximum total dollar amount of payment for each contract.

To permit ESA to receive partial payment during the course of performance, the City Board of Education was billed periodically by means of invoices, designated as OD–14 forms, that set forth employees' hours, salaries and other expenses incurred. ESA submitted its first OD–14 in February

---

\* Honorable Lawrence W. Pierce, U. S. District Judge for the Southern District of New York, sitting by designation.

1. Appellant was sentenced to concurrent terms of imprisonment of two years on each of the false statement counts, with all but four months suspended; appellant was placed on probation during the balance of the sentence (20 months). Appellant was also fined a total of $5000.

1973, and it was referred to an official in the comptroller's office for review and verification. Shortly before the comptroller's agent was to inspect ESA's books, however, Elsbery contacted his own accountant, Ben Cohen, and informed him that the employees had not actually been paid at the rates described in the OD–14, but that the full amount of money allocated for salaries would be paid to the employees in the future. Cohen communicated this information to the comptroller's agent, who responded that payment of the salary expenses claimed on the OD–14 would depend upon the existence of corporate letters of intent indicating that ESA would ultimately pay the employees at the full rate indicated on the invoice.

Accordingly, when the official visited ESA as scheduled he was shown letters of intent addressed to several employees that purported to show an agreement to pay them at the rates designated in the OD–14.[2] On that basis, and on the basis of Elsbery's representations about the salaries that would be paid, the invoice was approved and payment was made, as were all the remaining payments on the contracts between ESA and the City Board during the 1972–1973 school year.

The same procedure was followed with respect to the 1973–1974 year contracts: the comptroller's agent was shown letters of intent to pay employees' salaries that matched the rates set forth in the invoices and he approved payment by the City to ESA.

At trial, evidence was adduced to show that a number of the employees named on the OD–14s had not received the full salaries for which they were designated. It also appeared that they had never been told that they were entitled to the amounts which had been claimed as their salaries on the invoices. As it turned out, the difference between the sum claimed for salaries on the invoices and the actual salaries paid amounted to roughly $100,000.

In mid-1974, the City Board of Education called the attention of the United States Attorney for the Eastern District of New York to the ESA contracts. The City and the United States Attorney started separate, although cooperative, investigations into the ESA affair. On February 9, 1978, a federal grand jury indicted Elsbery on ten counts of making false statements and sixteen counts of mail fraud. The mail fraud counts were based upon the fact that the City sent its payments to ESA through the mail.[3]

On this appeal, Elsbery raises three issues. First, he argues that there was insufficient evidence upon which to convict him of a violation of 18 U.S.C. §§ 1001 and 1002. Second, he contends that reversible errors occurred during trial. Finally, he asserts that his federal indictment was delayed contrary to his constitutional rights.

*Sufficiency of the evidence.*

As appellant concedes, the disputed issue at trial was whether Elsbery intended to pay ESA's employees the full sums which ESA had collected as salary reimbursements from the Board of Education. There was sufficient evidence at trial to warrant the jury's inference that Elsbery did not intend to pay his employees the amounts which he represented to the City would be paid. An actual discrepancy between the salary reimbursements requested by ESA and the actual disbursements to the employees was proved. There was testimony by some of the former employees, moreover, that they had no expectation that any additional payments or bonuses were owing. There was also some evidence that ESA had billed for hours never worked.

Appellant points to evidence that some employees had been vaguely promised bonuses. He argues that the evidence sup-

---

**2.** Although the visit was on March 20, 1973, the letters were dated back to July 6, 1972.

**3.** The mail fraud counts not only included charges of using the mails in connection with

the fraud in the federally-funded contracts, but also charges of using the mails in allegedly defrauding the City on non-federally funded contracts.

ports his contention that he intended to pay the employees in full, and that payment was merely postponed until such time as ESA's overall financial condition would permit it. This was, indeed, the question for the jury which it resolved against the appellant. The verdict is not subject to challenge because the jury might have drawn an inference other than guilty intent from the evidence. "[T]o be sufficient as a matter of law, circumstantial evidence need not exclude all possible inferences but those of guilt." *United States v. Lubrano*, 529 F.2d 633, 636 (2d Cir. 1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 61, 50 L.Ed.2d 78 (1976); *accord, United States v. Fiore*, 467 F.2d 86, 88 (2d Cir. 1972) (alternative holding), *cert. denied*, 410 U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181 (1973); *United States v. Grunberger*, 431 F.2d 1062, 1066 (2d Cir. 1970).[4]

Appellant also contends that his acquittal on the mail fraud counts prevents conviction on the false statement counts. He reasons that by acquitting him of mail fraud, the jury necessarily found that the OD–14s were filed in good faith. Acquittal on one count of an indictment, however, does not preclude reliance upon facts relevant to that count in assessing the sufficiency of evidence for conviction on a different count. Collateral estoppel does not run between *simultaneous* inconsistent verdicts. *See Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 40, 76 L.Ed. 520 (1932); *United States v. Beverly*, 562 F.2d 201, 205 (2d Cir. 1977), *cert. denied*, 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978); *United States v. Zane*, 495 F.2d 683, 690 (2d Cir.), *cert. denied*, 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974).

*Trial errors.*

Appellant complains of two specific errors at trial: first, that the Government improperly suggested during summation, despite a lack of supporting evidence in the record, that Elsbery had personally pocketed the City funds earmarked for ESA em-

ployees' salaries; second, that the District Judge wrongly excluded evidence which showed that ESA's financial difficulties continued after 1974 at least until September 1976.

With regard to the first contention, while the prosecutor did intimate twice that Elsbery had personally appropriated payments made to ESA, the trial judge ruled that there was no indication that Elsbery had personally benefited from any salary overclaims, and he instructed the jury to disregard the unsupported allegation. In the light of this prompt corrective action, we believe that the prosecutor's remarks were not prejudicial, particularly since appellant concedes that "[t]he distinction [between Elsbery and ESA] was not stressed at trial. . . ." Appellant's Brief at 4 note **.

We turn to the second argument. Elsbery introduced into evidence a 1976 report on ESA by the Office of the Auditor General of the Board of Education. The prosecutor asked the court to strike those portions of the report which referred to events occurring after 1974, which was the terminal date of the period covered by the indictment. Appellant urged that ESA's financial difficulties after 1974 were relevant to explain why ESA never actually paid the employees the extra sums which Elsbery had promised to pay in 1973 and 1974. The trial judge acceded to the Government's request to strike.

■ The payment of employees after 1974 was not, strictly speaking, directly at issue in the case because the crime consisted of intentional misstatements uttered through 1974. The letters of intent were written during the period covered by the indictment. The gravamen of the Government's case was the testimony that many of the employees did not know that they were ever entitled to amounts greater than those they had received. The evidence of inability to pay would be relevant only to support a claim of intent if a promised payment were deferred. The evidence of financial

4. This is not a case like *United States v. Lange*, 528 F.2d 1280 (5th Cir. 1976), in which a conviction for false statements was reversed because the Government failed to establish that the defendant's affidavit was "technically inaccurate." *Id.* at 1289.

difficulties—especially after the period named in the indictment—did not counter the failure to inform employees that they were entitled to more pay. While it would have been easier for the prosecution to prove bad intent if ESA had been prosperous, the converse is not true. Although it would not have been beyond his discretion for Judge Costantino to admit the evidence, he was not in error for rejecting it because of its tangential relevance. The fact that employees who left the employ of ESA before 1974 testified that they left without expectation or promise of any further payment supports the exclusion of evidence of the post-1974 financial condition of ESA.

Nor was the post-1974 financial condition of ESA relevant as rebuttal, for the Government did not stress ESA's failure after 1974 to make retroactive payment of the full salaries which Elsbery had claimed on the OD–14s. Finally, there was not only ample evidence of ESA's poor financial condition before 1974, but the trial judge actually did permit some testimony that financial problems after 1974 may have hindered payments to employees that had been promised in the letters of intent. Thus, introduction of the parts of the audit report relating to ESA's financial situation after 1974 would have merely cumulated, in any event, evidence about a matter on the periphery of the trial.[5] We therefore hold that exclusion of those elements of the report is not ground for reversal.

*Delay until indictment.*

Elsbery's last contention on appeal is that he was entitled to an evidentiary hearing to prove that it was a violation of the Sixth as well as the Fifth Amendment for the Government to wait until 1978 to indict for crimes which it had begun to investigate as early as 1974.

■ It is indisputable that the Sixth Amendment speedy trial right does not apply to pre-indictment delay. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30

L.Ed.2d 468 (1971). Notwithstanding this principle, appellant advances two reasons why his speedy trial right may have been violated by the delay in indicting him. First, because we have intimated that there may be circumstances when the speedy trial protections may attach *before* a federal indictment is filed by virtue of a previous state indictment arising out of the same transaction, he argues that allowing the City to conduct its own audit while the federal prosecution waited was a violation of his constitutional right to a speedy trial. Second, he argues that because media attention focused upon the pre-indictment *investigation* of Elsbery, the investigation itself amounted to a "public charge" of wrongdoing which is functionally equivalent to an indictment for speedy trial purposes.

■ Neither reason persuades us that the pre-indictment delay here could offend the Sixth Amendment guarantee. We have, to be sure, suggested that there may be situations when a delay in bringing a federal indictment after dismissal of a previous state prosecution for the same transaction might violate the Speedy Trial Clause. *See United States v. Lai Ming Tanu,* 589 F.2d 82, 88–89 (2d Cir. 1978); *id.* at 90–91 (Oakes, J., concurring); *see also United States v. Mejias,* 552 F.2d 435, 442 (2d Cir.), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977). In the instant case, however, the federal indictment was preceded by no other state indictments, arrests or prosecutions that might even arguably trigger the Speedy Trial Clause. Hence, our remarks in *Tanu* and *Mejias* are inapposite.

■ Equally inapposite is appellant's argument that there may be situations in which the protections of the Speedy Trial Clause are activated by "public charges" that fall somewhat short of the actual indictment or arrest specified in *Marion.* Such a possibility was raised in Mr. Justice

---

5. Indeed, a question was raised on oral argument about whether the audit report would have shed light on the financial state of ESA or

rather only on the condition of a different corporation operated by Elsbery.

Douglas' opinion concurring in the result in *Marion*, 404 U.S. at 330–31, 92 S.Ct. 455 *and see United States v. Vispi*, 545 F.2d 328, 331–32 & n.2 (2d Cir. 1976), but that position was not adopted by the majority, which held that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." 404 U.S. at 320, 92 S.Ct. at 463. Yet even if there might be circumstances in which "accusation" for speedy trial purposes could be said to commence before actual arrest or indictment, they are not presented merely by a government investigation that receives the attention of the press. Investigation always precedes accusation: to treat the former as tantamount to the latter would efface the very distinction set forth in *Marion*. "[W]e decline to extend the reach of the amendment to the period prior to arrest." *Id.* at 321, 92 S.Ct. at 464–465.

■ Elsbery's claim based upon pre-indictment delay must rest, therefore, upon the Due Process Clause. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion, supra*, 404 U.S. at 324–25, 92 S.Ct. 455; *United States v. Lai Ming Tanu, supra*, 589 F.2d at 87. He must carry a heavy burden to sustain a claim of violation of due process. Under *Lovasco* and *Marion*, pre-indictment delay transgresses due process limits only when there is a showing of actual prejudice to the defendant's right to a fair trial *and* unjustifiable Government conduct. *Lovasco*, 431 U.S. at 789–90, 97 S.Ct. 2044; *Marion, supra*, 404 U.S. at 324–25, 92 S.Ct. 455; *Tanu, supra*, at 87.

■ Appellant has not demonstrated that the delay before indictment actually prejudiced his ability to defend himself at trial. The argument that by 1977 and 1978 witnesses who would have cooperated with the defense earlier had become antagonistic through Government intimidation is unpersuasive. There is no reason to believe that the changes of heart, if they did occur, would not have occurred even if the indict-

ment had been brought sooner. We must also reject the contention that during the interim period witnesses' memories dimmed; that has not been considered the sort of actual substantial prejudice that predicates reversal for pre-indictment delay. *See United States v. King*, 560 F.2d 122, 131 (2d Cir.), *cert. denied*, 434 U.S. 925, 98 S.Ct. 404, 54 L.Ed.2d 404 (1977); *United States v. Payden*, 536 F.2d 541, 544 (2d Cir.) (per curiam), *cert. denied*, 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976); *United States v. Finkelstein*, 526 F.2d 517, 526 (2d Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). Finally, there is no merit to the argument that the investigative delay prevented ESA from recouping its past losses so that it could, at last, afford to pay the salaries that had been promised in the letters of intent. Elsbery's own position at trial was that ESA never had the cash on hand to pay the full salaries due; logically, therefore, an earlier prosecution would have made no difference to ESA's ability to make the disbursements. Indeed, if anything, the pre-indictment delay was of potential benefit to Elsbery, since it increased the time span during which he might have gained access to funds with which he could have demonstrated good faith by making further payments to his employees.

At any rate, the trial judge below found that there was no showing of impropriety on the part of the Government with respect to the delay. That finding was based upon the affidavit of the prosecutor in the case, *compare Lovasco, supra*, 431 U.S. at 796, 97 S.Ct. 2044, after consideration of papers submitted by the appellant and of argument on appellant's motion. In the circumstances, there was no need for a further hearing.

Affirmed.