UNITED STATES of America,

v.

John F. LONG and John S. Mahoney, Jr., Defendants.

No. SS 87 Cr. 943 (DNE).

United States District Court, S.D. New York.

Sept. 27, 1988.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., Joan McPhee, Asst. U.S. Atty., New York City, of counsel, for U.S.

Jo Ann Harris, and Michael G. Dowd, New York City, for defendant John S. Mahoney, Jr.

Law Offices of Lawrence Vincent Kelly, Lawrence Vincent Kelly, James P. Lavin, and Diane B. Walker, New York City, of counsel, for defendant John F. Long.

## OPINION AND ORDER

EDELSTEIN, District Judge:

### BACKGROUND

John F. Long ("Long") is, and at all relevant times of the indictment was, Secretary–Treasurer of Local 804 ("Local 804") of the International Brotherhood of Teamsters ("Teamsters"). John S. Mahoney, Jr. ("Mahoney") occupied the same post with Teamsters Local 808 ("Local 808"). On December 14, 1987, the grand jury handed up an indictment charging Long with one count of violating the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. § 1961 *et seq.*, and one count of conspiring to violate RICO. That indictment remained sealed until January 13, 1988. The grand jury returned an eight count superseding indictment ("First Superseder") on April 27, 1988. The First Superseder added Mahoney as a defendant. A second superseding indictment ("Second Superseder"), which added four counts against Long, was filed on June 29, 1988.

The RICO counts charge that, from 1978 through 1987, Long, Mahoney, and others participated in a racketeering enterprise aimed at producing income for its members. The participation is summarized in the indictment by reference to ten enumerated acts of racketeering. These acts include bribery, receipt of kickbacks for being influenced in matters relating to an employee benefit plan, receipt of unlawful payments from employers, extortion, and obstruction of justice.

There are several other participants in this alleged enterprise who played key

roles: Vincent Joseph Rotondo, alleged to be a former high-ranking member of the Decavalcante organized crime faimily; Jesse Hyman, chief executive of Resource Capital Group, Ltd. ("Resource Capital"); Penvest, Inc. ("Penvest"), a company allegedly controlled by Hyman. The indictment charges that Long and Mahoney used their position as high ranking officials of Teamster locals to disburse Teamster pension funds to further the ends of the alleged enterprise. For instance, both Long and Mahoney allegedly invested pension funds in Penvest in exchange for various payoffs. Rotondo allegedly reaped profits from this enterprise and also assisted in its operation.

Both defendants have made omnibus pretrial motions seeking, *inter alia*, dismissal of the entire indictment, dismissal of certain counts of the indictment, an order suppressing certain evidence obtained by the grand jury, a transfer of venue, additional discovery material, a bill of particulars, and severance of defendants and counts. The defendants have also jointly applied for an order of recusal and directing this case be reassigned.

## I. MOTIONS FOR RECUSAL

Long and Mahoney[1] seek an order from this court recusing itself and directing the case be sent back to the "wheel" for reassignment. After the instant case was assigned to this court, the government filed a civil RICO complaint that basically parallels the charges in the instant indictment. That case was assigned by lot to the late Judge Daronco, and was later transferred to Judge Broderick. At the government's request and with consent of counsel for both Long and Mahoney, the civil case was transferred to this court—a procedure that is common in parallel civil and criminal RICO cases. Finally, the government filed a civil RICO action against the Teamsters, *United States v. International Brotherhood of Teamsters*, 88 Civ. 4486 (DNE),

which pursuant to Rule 15 of the Local Rules for the Division of Business was referred to this court to decide whether it should be accepted as related.

■ As an initial matter, the court notes that Mahoney's motion for the court to recuse itself and order this case to be reassigned, does not suggest that this court cannot impartially preside over the trial. In fact, Mahoney clearly points out that he does not charge any actual prejudice to him. Mahoney's Memorandum in Support of Motion for the Court to Recuse Itself ("Mahoney's Recusal Memo") at 14. Mahoney does contend, however, that the government has manipulated the assignment rules of this court so as to cause *United States v. International Brotherhood of Teamsters*, 88 Civ. 4486 (DNE) to come before this court. From that contention, Mahoney concludes that his due process rights have been infringed and, therefore, the appropriate remedy is for this court to recuse itself in the instant case.

■ Mahoney imputes to the United States Attorney Machiavellian purposes coupled with Delphian foresight. The instant case was assigned to this court by the "wheel" in an absolutely impartial and random fashion. The government thus had no control over this assignment. Although Mahoney theorizes that this case served as the rudder by which the government could steer the *Teamsters* case to this court, he fails to explain what course the government would have followed if Lady Luck had not smiled on the government that Thursday and the name of another judge had found its way out of the wheel. Further, the transfer of the Long and Mahoney civil RICO case was transferred in routine fashion with the consent of the defendants and counsel. Again, the government had no unilateral power to effectuate the transfer. Finally, the decision to accept or reject the *Teamsters* case as related was for this court to make.[2] The

---

1. The motion was made and briefed by Mahoney's counsel. Long, however, in his moving papers joins in the motion and all others that may apply to him.

2. Rule 15 of the Local Rules for the Division of Business leaves the decision whether to accept a case as related to the judge's discretion. Moreover, the Local Rules for the Division of Business are "adopted for the internal management

government had no say whatsoever in that decision. That the government could have predicted these events, or expended these efforts on the chance that they would occur, all for the purpose of having a particular judge assigned to a case is a dubious proposition at best.

Moreover, the defendant does not claim that he has suffered any prejudice as a result of this court hearing his case. Mahoney unequivocally states that this court is biased neither for nor against him. Nevertheless, he fails to explain why—given his concession of this court's impartiality and lack of bias—the government would subject itself to a path wrought with fortuity solely to have the opportunity to *request* whether the court would accept the *Teamsters* case. This tortured reasoning defies logic. Although Mahoney accuses the government of "judge-shopping," the tenor of this motion suggests that it is Messrs. Mahoney and Long who, for reasons known only to them and their counsel, are seeking to shop for a judge more to their liking.

Mahoney argues that he has a right to the random assignment of a judge. Without addressing the merits of this contention, this case was assigned, as it is in every criminal case, by random drawing from the wheel. The defendant has received what he asked for—impartial assignment—no more and no less. He is entitled to a fair trial, and he will be afforded one. Accordingly, defendants' motion for reassignment is denied.

## II. MOTIONS OF JOHN S. MAHONEY, JR.

### 1. *Transfer of Venue to Eastern District of New York*

■ Defendant Mahoney seeks an order dismissing the instant indictment for failure to establish venue, or in the alternative, an order pursuant to Federal Rule of Crimi-

nal Procedure 21(b) transferring this case to the United States District Court for the Eastern District of New York. Mahoney contends that this court should dismiss the indictment naming him because the conduct alleged in the indictment, with the exception of giving perjurious testimony as alleged in Counts Five and Six, took place in the Eastern District. Moreover, Mahoney argues that Counts One through Four fail to allege venue with the requisite specificity. Finally, Mahoney maintains that permitting the government to manufacture venue by requiring a defendant to testify in the district about acts allegedly committed outside the district and then basing venue on the false testimony will deny him due process of law.

Federal Rule of Criminal Procedure 18 requires prosecution "in a district in which the offense was committed." Although the government must prove venue at trial by a preponderance of the evidence, *see United States v. Panebianco*, 543 F.2d 447, 445 (2d Cir.1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977), at this stage it suffices for the government to allege with specificity that the charged acts support venue in this district. *See United States v. Castellano*, 610 F.Supp. 1359, 1388 (S.D.N.Y.1985); *United States v. Valle*, 16 F.R.D. 519, 521–22 (S.D.N.Y. 1955). Moreover, if the indictment is not sufficiently specific on its face, the government may remedy the inadequacy by providing a sworn bill of particulars. *See* C. Wright, Federal Practice and Procedure: Criminal 2d § 125 at 380–81 (1982).

■ The propriety of venue in a particular district depends on the nature of the crime charged. *See United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946). If an offense involves a single act, it is relatively simple to ascertain the "district in which the offense was committed." In the case of other offenses, venue is proper in any district

of the case load of the court and *shall not be deemed to vest any rights in litigants or their attorneys....*" Preface to Rule 15 (emphasis added). As the Chief Judge of this district has recently stated: "No attorney has any rights in [Rule 15]. That was put in solely for the benefit

of the judges, to ensure the equality of caseloads.... Nobody has a right to any particular judge, [e]verybody has a right to an unbiased judge." Manhattan Lawyer, September 20–26, 1988, at 10.

in which any part of the alleged crime was committed. *See United States v. Ramirez–Amaya,* 812 F.2d 813, 816 (2d Cir. 1987); *see also* 18 U.S.C. § 3237(a). Thus, for example, a conspiracy charge may be prosecuted in any district in which an overt act in furtherance of the conspiracy was committed. *See e.g. Ramirez, supra,* 812 F.2d at 816 (conspiracy case properly in the Southern District of New York because the cocaine at issue was flown over the Verrazano Narrows, although it landed in the Eastern District of New York).

The instant indictment alleges that Mahoney committed in the Southern District at least one overt act in furtherance of the racketeering enterprise and the RICO conspiracy alleged in Counts One and Two. Counts Five and Six likewise allege perjury committed in the Southern District, and thus are properly in this district. Finally, the government has conceded that Count Three may not properly be tried in this district, absent a waiver by the defendant. Accordingly, Mahoney's motion to dismiss pursuant to Fed.R.Crim.P. 18 is granted as to Count Three, unless the defendant consents to trial in this district. The motion is denied as to Counts One, Two, Five, and Six.

■ Alternatively, Mahoney contends that trial in the Southern District is prejudicial because an Eastern District jury is more likely to be "blue collar" and, as a result, more favorable toward unions in general and the Teamsters in particular. Fed.R.Crim.P. 21(b) provides: "For the convenience of the parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district." The United States has broad discretion in deciding whether and when to bring a criminal prosecution. *See* 18 U.S.C. § 3237(a); Note, *Transfer of Venue in Income Tax Prosecutions: 18 U.S.C. § 3237(b)'s Use of the Mails Requirement,* 53 Ford.L.Rev. 937, 937 (1985). The burden of demonstrating that a change of venue is appropriate under Rule 21 is on the moving party. *See United States v. Aro-*

*noff,* 463 F.Supp. 454, 461 (S.D.N.Y.1978). Defendant does not contend that the eastern bank of the East River is more convenient than the western bank to either the parties or the witnesses. Rather, Mahoney focuses on the "interest of justice" clause of Rule 21, contending that an Eastern District jury will be more impartial than a Southern District jury. Whether this is an accurate statement is irrelevant. The important question is whether the government has sought, or will gain, an unfair advantage by prosecuting this case in this district. In trying this case, the court must ensure that, regardless of its composition, the jury finally empaneled not have any bias or prejudice either for *or* against unions. Thus, the unsubstantiated assertion that a jury in the Eastern District is more likely to favor labor unions is unavailing and does not satisfy the burden of proof the defendant bears. Accordingly, the motion to transfer this case to the Eastern District, pursuant to Fed.R.Crim.P. 21(b) is hereby denied.

### 2. *Motion to Dismiss the Indictment for Fifth Amendment Violation Due to Preindictment Delay in Prosecution*

■ Defendant Mahoney contends that, as early as January 1983, the government had sufficient information to bring against him the charges in the instant indictment, which was filed on April 27, 1988. Mahoney thus concludes that the five year delay in filing the indictment violates his fifth amendment right to due process. Accordingly, Mahoney moves this court for an order dismissing the indictment.

■ It is clear that the sixth amendment right to a speedy trial does not apply to preindictment delay. *See United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *United States v. Elsbery,* 602 F.2d 1054, 1058 (2d Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979). The Supreme Court has nonetheless recognized that an excessive preindictment delay may in some cases deny a criminal defendant his fifth amendment right to due process of law. *See United States v. Lovasco,* 431 U.S. 783,

788, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *Marion, supra,* 404 U.S. at 324, 92 S.Ct. at 465. Notwithstanding this limited fifth amendment right, the "applicable statute of limitations ... is ... the primary guarantee against bringing overly stale criminal charges." *Marion, supra,* 404 U.S. at 322, 92 S.Ct. at 464 (quoting *United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966)). As a result, a defendant seeking to establish a due process violation arising out of preindictment delay bears the heavy burden of demonstrating "actual prejudice to the defendant's right to a fair trial *and* unjustifiable Government conduct." *Elsbery, supra,* 602 F.2d at 1059; *see United States v. Rubin,* 609 F.2d 51, 66 (2d Cir.1979), *aff'd,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).[3]

Vincent Joseph Rotondo was killed on January 4, 1988. Mahoney contends that Rotondo's absence will prejudice him because he will not be available to testify and his statements cannot be cross-examined if introduced by another witness, presumably Jesse Hyman. This type of prejudice, however, will not justify dismissal for preindictment delay. *See Elsbery, supra,* 602 F.2d at 1059. Faded memories or unavailable witnesses are inherent in any delay, even if justifiable. To merit dismissal a defendant must demonstrate a substantial, actual prejudice to his ability to defend himself. Such a showing has not been made.

Moreover, Mahoney's perceived prejudice is speculative. Mahoney does not know whether Rotondo's presence would have helped or hindered his case. There is no way of knowing what his testimony would have been. Therefore, Mahoney's entire claim of prejudice is based on conjecture.

There is also no evidence that the government was prompted by illicit motives in delaying prosecution. Mahoney has failed to allege that the government has

sought to gain an unfair tactical advantage by delaying this prosecution. Further, the government represents that it continued to investigate the events described in the indictment and lacked sufficient evidence to prove their case beyond a reasonable doubt until the indictment was filed. Finally, the government contends that Mahoney delayed the bringing of this indictment by allegedly lying to the grand jury. Although the government must prove its allegations, if Mahoney had lied to the grand jury it would certainly have contributed to the delay in bringing the indictment.

Whereas Mahoney has failed to demonstrate either substantial actual prejudice as a result of the preindictment delay or unjustifiable government conduct, the motion to dismiss for a violation of due process is denied.

### 3. *Motion to Suppress on the Ground of Prosecutorial Abuse of the Grand Jury Process*

■ According to Mahoney, on April 15, 1988 the government served two subpoenas returnable April 25, 1988: a subpoena duces tecum on the Fund Administrator and a witness subpoena on Robert Eaton. On April 27, 1988 the instant indictment was returned against Mahoney. Mr. Eaton allegedly testified before the grand jury on June 22, 1988 regarding a trip Mahoney took to Hawaii that forms the basis for Count 3 and Racketeering Act 5 of the indictment. Mahoney therefore contends that the government has impermissibly used the grand jury to gather evidence for trial—namely, Eaton's alleged grand jury testimony regarding this purported trip to Hawaii. Consequently, Mahoney seeks an order suppressing any evidence obtained by the grand jury after April 27, 1988.

The law is well-settled that it is improper to use the grand jury "for the sole or dominating purpose of preparing an al-

---

**3.** Defendant argues that negligence on the part of the government will suffice to establish impermissible government conduct. Memorandum of Law in Support of Defendant Mahoney's Pretrial Motions ("Mahoney Memo") at 9–11. The law in this circuit is clear that *both* actual prejudice and unjustifiable government conduct

so as to gain a tactical advantage is required to support a fifth amendment challenge to preindictment delay. *See, e.g., Elsbery, supra,* 602 F.2d at 1059; *Rubin, supra,* 609 F.2d at 66. Defendant's contention that the Second Circuit has misread *Marion* and *Lovasco* in *Elsbery* is unpersuasive.

ready pending indictment for trial."
*Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir.1985); *United States v. Dardi*, 330 F.2d 316, 336 (2d Cir.), *cert. denied*, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964). Nevertheless, the grand jury may continue to investigate additional criminal activity "even when the evidence received may also relate to a pending indictment." *United States v. Zarattini*, 552 F.2d 753, 757 (7th Cir.) (quoting *United States v. Braasch*, 505 F.2d 139 (7th Cir.1974)), *cert. denied*, 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977). LaFave & Israel, Criminal Procedure § 8.8(d) at 664. The Supreme Court has noted the broad investigatory powers of the grand jury: " 'A grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.' " *United States v. Dionisio*, 410 U.S. 1, 13, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973) (quoting *United States v. Stone*, 429 F.2d 138, 140 (2d Cir.1970)).

In the instant case the timing of the subpoena does not suggest that the grand jury has continued its investigation for any improper purpose. *See United States v. Santoro*, 647 F.Supp. 153, 174 (E.D.N.Y. 1986), *rev'd on other grounds sub nom., United States v. Davidoff*, 845 F.2d 1151 (2d Cir.1988). For instance, the subpoena was not issued during the trial of the defendant, *see United States v. Dardi, supra*, 330 F.2d at 336, or following a mistrial prior to the retrial of the defendant, *see United States v. Kovaleski*, 406 F.Supp. 267, 269–70 (E.D.Mich.1976). The subpoena was also not issued after the investigation had become inactive solely to question a particular witness, *see Simels, supra*, 767 F.2d at 29.

The government has submitted an affidavit to the court describing the nature of the grand jury's investigation after April 27, 1988. There are no objective indicia that trial preparation was "the sole and dominant purpose" of the grand jury. Further, the prosecutor's sworn statement describes the grand jury investigation as continuing. The court is thus persuaded that defendant has failed to demonstrate any grand jury abuse warranting dismissal of the instant indictment. Accordingly, Mahoney's motion is denied.

■ The defendant also seeks a bill of particulars identifying the measures taken by the government to ensure grand jury secrecy. Mahoney maintains that the secrecy of the grand jury has almost certainly been compromised by the civil actions naming the defendant, which Mahoney claims are related to the subject matter of this indictment.[4] The defendant's principal concern seems to be that information relating to the grand jury investigation has somehow found its way into the hands of Justice Department attorneys handling the civil cases involving Mahoney.

Secrecy in grand jury proceedings, long considered a hallmark of the grand jury system, has been codified as Federal Rule of Criminal Procedure 6(e)(2) and (3). Subject to certain exceptions,[5] the rule prohibits all those with access to the grand jury from disclosing matters occurring before the grand jury. *See* Fed.R.Crim.P. 6(e)(2). Concededly, government attorneys who are not involved in a criminal prosecution do not fall within any of the exceptions enumerated in Rule 6(e)(3). *See United States v. Sells Engineering Inc.*, 463 U.S. 418, 424–25, 103 S.Ct. 3133, 3138–39, 77 L.Ed.2d 743 (1983). Nevertheless, the inquiry does not end there.

---

**4.** According to Mahoney, there are three civil actions currently pending in this court in which Mahoney is a defendant. *Brock v. Mahoney*, 86 Civ. 5403 (LLS); *United States v. Mahoney*, 88 Civ. 3289 (DNE); *McLaughlin v. Mahoney*, 88 Civ. 3387 (RJW). *Brock* and *McLaughlin* are civil cases brought by the Department of Labor for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Whether these ERISA cases can be properly considered as related given the completely different legal issues presented is questionable at best.

**5.** Witnesses before a grand jury are not bound by Rule 6(e)(2). Rule 6(e)(3)(A) permits government prosecutors and those necessary to assist the prosecutor access to grand jury proceedings. All other disclosures must be ordered by the court. Fed.R.Crim.P. 6(e)(3)(C).

Grand jury proceedings enjoy a strong presumption of regularity and consequently a defendant seeking a hearing regarding alleged grand jury abuse must show prejudice or bias. *See, e.g., United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Burke,* 700 F.2d 70, 82 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983). Mahoney has not pointed to any potential bias or prejudice in his criminal trial, much less any actual prejudice he has suffered. Moreover, to warrant the extreme sanction of dismissing an indictment, a defendant must demonstrate particular harm or prejudice suffered as a result of the prosecutorial misconduct. *See United States v. Broward,* 594 F.2d 345 (2d Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). Accordingly, the defendant has failed to override the substantial presumption against an attack on the integrity of the grand jury.

The relief requested by Mahoney can only provide him with information that could confirm or deny the grand jury leaks alleged in his motion. Nevertheless, in the event that the worst case scenario set forth by the defendant were true, namely that information gathered by the grand jury had been disclosed to civil division attor-ney's in the Department of Justice, it is unclear how that would affect the fairness of Mahoney's trial on the instant indictment.[6] If in fact there had been a breach of grand jury secrecy, the prejudice would be more apparent in the civil actions to which Mahoney alludes. Such a breach would be properly addressed in the civil action, in which case the more appropriate remedy might be a contempt citation. *See* Fed.R.Crim.P. 6(e)(2). Thus, information provided by the relief Mahoney seeks would not, even at its most damning, support an application to dismiss the indictment, because there has been no specific showing of prejudice or bias. Accordingly, Mahoney's motion is denied.

### 4. *Motion to Dismiss Counts Five and Six*

Mahoney contends that Counts Five[7] and Six of the indictment, which charge him with testifying falsely before a grand jury and at a deposition in connection with *Brock v. Mahoney,* 86 Civ. 5403 (LLS), must be dismissed as a matter of law. With respect to Count Five, Mahoney contends that certain questions posed to him before the grand jury were ambiguous and that his testimony is "literally true" under the test set forth in *United States v. Bronston,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973).[8] With respect to Count

---

**6.** The accusations made by Mahoney in his motion are not supported by reference to any tangible evidence. They are largely made up of suspicion and conjecture. For instance, Mahoney's Memorandum states: "It defies reason to believe that the attorneys from the civil division of the United States Attorney's Office and the Department of Justice in Washington, have not been exposed to information, testimony or documents pertaining to grand jury investigations involving Mahoney." In light of the severity of the accusations, counsel's approach is rather cavalier. As a former Assistant United States Attorney, it should not appear to defendant's counsel to "defy reason" that government attorneys would respect the sanctity of grand jury secrecy.

**7.** Mahoney's challenge to count five also is directed to Racketeering Act No. 9, which is based on the same allegedly perjurious testimony.

**8.** The testimony challenged by Mahoney deals with two issues: Whether Jesse Hyman played a role in procuring a $20,000 personal loan for

Mahoney from Sterling National Bank, and whether Mahoney made repayments of such loan. The relevant portions of the transcript are as follows:

Q. Mr. Mahoney, one other line of questioning ... and that has to do with a personal loan that I think was arranged for you by Mr. Hyman of $20,000?
A. I'm familiar with it. I'm not so sure he arranged it.

\* \* \* \* \* \*

Q. To your knowledge you don't know whether Dr. Hyman had anything to do with that or not?
A. I really can't say.

\* \* \* \* \* \*

Q. The loan was for $20,000?
A. Yes, at twenty point something percent.
Q. Obviously you have been making repayments?
A. Yes.
Q. Do I understand that some of the payments have been made in cash and some have

Six the defendant also maintains there was an ambiguity in the questioning that would render Mahoney's challenged deposition testimony true.

The government concedes in its memorandum that the portion of Count Five charging that Mahoney falsely testified he personally made repayments on the Sterling loan must be dismissed. That portion of Mahoney's testimony before the grand jury was literally true, albeit perhaps unresponsive. Mahoney, in fact, personally forwarded payments to Sterling, although the government contends, and intends to prove at trial, that Hyman provided Mahoney with the money for such payments. Under the landmark case of *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed. 2d 568 (1973) a statement that is "literally true but unresponsive" cannot form the basis of a federal perjury prosecution. *See id.* at 362, 93 S.Ct. at 602. Such evasiveness is better "remedied through the 'questioner's acuity.'" *Id.* Accordingly, the portion of Count Five that relates to Mahoney's testimony regarding the repayment of the Sterling loan is dismissed.

■ Nevertheless, with respect to other testimony challenged by Mahoney, Count Five should not be dismissed. The findings of a grand jury are accorded a strong presumption of regularity and a defendant challenging the competence or admissibility of evidence supporting an indictment bears a heavy burden. *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Further, in a perjury trial, the truth or falsity of a particular statement is a question for the jury to decide. *See United States v. Lighte*, 782 F.2d 367, 372 (2d Cir.1986); *United States v. Wolfson*, 437 F.2d 862, 878 (2d Cir.1970). The jury must determine "whether the question—as the declarant must have understood it, giving it a reasonable reading—was falsely answered." *Id.*

■ Mahoney contends that his testimony on Hyman's role in arranging for the loan was equivocal. For example, Mahoney responded, "I'm not so sure he [Hyman] responded,

been—at least by money order and some made by check?

man] arranged for it [the loan]" and "I really can't say" when asked whether Hyman arranged the transaction. Testifying as to lack of recollection, or denying knowledge does not insulate a witness from a perjury prosecution, if the witness in fact recalled or knew the requested information. *See Lighte, supra*, 782 F.2d at 373. If the government can prove to the jury that Mahoney was fully aware of Hyman's role in obtaining the loan from Sterling, the testimony would be perjurious. Accordingly, Mahoney's motion to dismiss Count Five is denied except as to the testimony regarding the repayment of the loan.

■ With respect to Count Six, the defendant's reading of the deposition transcript is, to say the least, tortured. The exchange focused on by Mahoney, when taken out of context, perhaps suggests some ambiguity:

Q. Was this a first mortgage?

A. Was this a first mortgage?

Q. Was this a first mortgage on the Lexington House?

A. No. I had a mortgage at the time with Catskill Savings Bank on the house.

Q. Where is the Catskill Savings Bank located?

A. Catskill.

Q. Catskill, New York?

A. Yes.

Q. Did you receive any assistance from Mr. Hyman in making payments on the mortgage?

A. No.

Q. Did you receive any assistance from Mr. Bedell in making payments on the mortgage?

A. No.

Mahoney contends that when he said Hyman had not assisted in paying the "mortgage" he was referring to the first mortgage. Nevertheless, a review of the transcript reveals that for the prior nine pages of deposition transcript the $20,000 loan from Sterling was referred to by both Ma-

A. Some made by money order and some by check, yes.

honey and the questioner as a mortgage. The defendant attempts to set forth one interpretation of the meaning of the question, "Did you receive any assistance from Mr. Hyman in making payments on the mortgage?". But as noted *supra* it is neither the defendant's role nor the prerogative of this court to ascertain the meaning of a question with respect to a charge of perjury. That is the sole province of the jury. *See Lighte, supra,* 782 F.2d at 372; *United States v. Wolfson,* 437 F.2d 862, 878 (2d Cir.1970).[9] Accordingly, Mahoney's motion to dismiss Count Six is denied.

### 5. *Motion to Dismiss Counts One and Two of the Indictment*

■ Mahoney contends that Counts One and Two of the indictment, which charge a conspiracy to violate RICO and participation in a RICO enterprise, are improperly pleaded. Specifically, the defendant argues that: (1) The indictment fails to allege an agreement to form a RICO enterprise or a pattern of racketeering activity; and (2) the indictment alleges insufficient facts to demonstrate an ongoing organization, personnel who functioned as a continuing unit, or an enterprise that is distinct from the alleged acts of racketeering.

Federal Rule of Criminal Procedure 7(c)(1) provides in part: "The indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Under the law of this circuit, Rule 7 requires an indictment to "do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United*

*States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). This standard has been applied to an indictment charging violations of RICO. *See United States v. Bagaric,* 706 F.2d 42, 61 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983). Counts One and Two of the instant indictment clearly satisfy this standard.

Mahoney's arguments against the RICO charges are inapposite to a motion to dismiss the indictment. Those arguments would apply, if at all, to the government's proof at trial. Mahoney complains that the government has stated allegations in conclusory fashion. The government is required to do no more. Defendant's arguments that the government cannot prove the requisite elements of RICO are left for trial. Mahoney's motion to dismiss Counts One and Two is, therefore, denied.

### 6. *Motion to Sever*

■ Defendant Mahoney has also moved this court for an order severing his trial from that of Mr. Long on the ground that Mr. Long's testimony would be necessary to his defense. Long has filed an affidavit stating that he would testify on behalf of his codefendant if Mahoney's trial were held after his own. Long's testimony would be that he never gave any "money or anything of value ... to induce [Mahoney]" to invest Local 808 funds into Penvest. He would further testify that he never attempted to induce Mahoney to "do anything in connection with Bottom Sportswear, Inc." [10]

---

9. The only exception is a line of questioning that is so vague as to be "fundamentally ambiguous." *United States v. Lattimore,* 127 F.Supp. 405 (D.D.C.) (holding that the phrase "follower of the Communist line" had no mutually understandable meaning), *aff'd,* 232 F.2d 334 (D.C.Cir. 1955); *Lighte, supra,* 782 F.2d at 375. In light of the transcript, it is apparent that the term "mortgage" is not one "with a meaning about which men of ordinary intellect could not agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *Lattimore, supra,* 127 F.Supp. at 410. Moreover, a statement cannot be taken out of context to establish funda-

mental ambiguity; rather, it must be considered within the testimony as a whole." *See United States v. Bonacorsa,* 528 F.2d 1218, 1221 (2d Cir.), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976). Accordingly, there is no doubt that the questions at issue are not "fundamentally ambiguous."

10. Both Long and Mahoney applied for leave to file reply papers. The right to reply papers is not automatic. Counsel for both defendants submitted letters summarizing the arguments they intended to raise in reply papers. Upon consideration of these submissions the court denied leave to file reply papers because of a failure to demonstrate why those arguments

Federal Rule of Criminal Procedure 14 provides in pertinent part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires.

The decision to sever a case rests in the sound discretion of the district court. *See United States v. Guerrerio*, 670 F.Supp. 1215, 1221 (S.D.N.Y.1987). Moreover, the defendant seeking severance must demonstrate that a joint trial would in effect deny him a fair trial. *Id.; United States v. Abrams*, 539 F.Supp. 378, 381 (S.D.N.Y. 1982). As a general rule, persons jointly indicted should be jointly tried because it "conserves judicial resources, alleviates the burdens on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony in a series of trials." *United States v. Lyles*, 593 F.2d 182, 191 (2d Cir.) (quoting *United States v. Borelli*, 435 F.2d 500, 502 (2d Cir.1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971)), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979).

This circuit has set forth four factors to consider in determining whether to grant severance on the basis that a codefendant's testimony is necessary:

(1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege;

(2) the degree to which the exculpatory testimony would be cumulative;

(3) the counter arguments of judicial economy; and

(4) the likelihood that the testimony would be subject to substantial, damaging impeachment.

*United States v. Finkelstein*, 526 F.2d 517, 523–24 (2d Cir.1975) (citations omitted), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976).

Even assuming that Long would be willing to testify at trial on behalf of Mr. Mahoney, the defendant has failed adequately to demonstrate that such testimony would be exculpatory or that it would not be cumulative. The testimony Long claims he would give is too equivocal to demonstrate that it would be exculpatory. More importantly, there is no attempt to show that this testimony would not be cumulative. Mahoney states conclusorily that, "Long is the only person who can make these dispositive statements." Such a statement without substantiating facts is unpersuasive.

Finally, to justify a severance under Rule 14 a defendant must demonstrate that, absent such a severance, his trial would be unduly unfair. It does not suffice to state that a co-conspirator's testimony would merely be *helpful* or that the chances for acquittal would be increased. The defendant seeking severance must demonstrate prejudice that would in effect abridge his right to a fair trial. Mahoney has not attempted to set forth the prejudice he would suffer, beyond the loss of arguably helpful testimony, if Long does not testify. Accordingly, Mahoney's motion for severance on the ground of necessary co-conspirator testimony is denied.

Mahoney also seeks, pursuant to Rule 14, to sever Counts Five and Six, which charge him with perjury before the grand jury and at a deposition.[11] As discussed *supra*, a

were not and could not have been raised in the original motion papers.

Nevertheless, as part of his proposed reply, Long supplied a more complete affidavit in support of Mahoney's motion to sever. The second affidavit included an affirmative waiver of his fifth amendment right against self incrimination and more specific proposed testimony. Although the reply papers were not considered in deciding this motion, the court notes that the second affidavit would not require a different

conclusion to the ensuing discussion and disposition of this motion.

11. Mahoney acknowledges that if a conspiracy is charged, perjury counts are properly joined pursuant to Rule 8 of the Federal Rules of Criminal Procedure. Mahoney Memo at 51. *See United States v. Charnay*, 211 F.Supp. 904, 907 n. 13 (S.D.N.Y.1962) (Weinfeld, J.). Accordingly, severance could only be sought pursuant to Rule 14.

defendant seeking severance pursuant to Rule 14 bears a heavy burden to demonstrate that a failure to sever will deny him a fair trial. The "prejudice" cited is that the perjury count places pressure on Mahoney to testify at his trial, when he would then presumably repeat the allegedly perjurious testimony.[12] This argument is unpersuasive because it does not set forth a specific prejudice with respect to Mahoney. To accept such an argument would require the court to sever perjury counts from RICO counts whenever they are pleaded in the same indictment. The court is not prepared to adopt such a rule. Mahoney has, therefore, failed to carry his burden to demonstrate substantial prejudice that would persuade this court to sever the perjury counts.

### 7. Motion to Disclose Informants

Mahoney moves the court to order the government to disclose the identity of informants. In the alternative he seeks an *in camera* hearing at which the government would be required to show that the testimony of the informants would not be helpful to the defense. He argues that "it is reasonably probable that the informer's [sic] can provide highly relevant testimony to vindicate an important element of the defense on the merits at trial." Mahoney Memo at 53. Mahoney contends that these informants might have "highly relevant" information regarding whether Mahoney was seen at Resource Capital.

The decision whether to compel disclosure of the identity of informants is a matter left to the court's discretion. The general rule is that an informant's identity need not be disclosed absent a showing that such disclosure is "essential to the defense." *Scher v. United States*, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 (1938); *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir.1984), *cert. denied,* — U.S. ——, 107 S.Ct. 3261, 97 L.Ed.2d 761 (1985). Disclosure is thus warranted when an informant is a key witness or a

participant in the crime charged. In sum, the testimony of such informant must be significant in determining the ultimate question of guilt or innocence. *See Russotti, supra,* 746 F.2d at 950.

Initially the court notes that to require the government to prove at a hearing that the informants will give testimony that is "helpful to the defense" is inappropriate. The burden is on the defendant to demonstrate the need for the extraordinary remedy of disclosure. To order a hearing and require the *government* to prove anything would shift that burden. Moreover, defendant relies on the wrong standard. The threshold is not how "helpful" such testimony would be; rather, the defendant must demonstrate that testimony would be significant with respect to the ultimate question of guilt or innocence. Accordingly, unless disclosure is warranted, a hearing would serve no purpose but to shift the burden of persuasion.

With respect to the order of disclosure, Mahoney again attempts to satisfy his burden of demonstrating prejudice with conclusory statements. Whether Mahoney was ever present at Resource Capital's offices, although perhaps relevant and probative, can hardly be deemed "significant in determining guilt or innocence." Moreover, it appears that other employees of Resource Capital could testify as to having seen or not seen Mahoney. In light of the minimal showing of need, the defendant's motion to compel disclosure of informants is denied.

### III. LONG'S MOTIONS

### 1. Motion to Dismiss Counts One and Two

Long seeks an order dismissing Counts One and Two on the ground of double jeopardy, collateral estoppel, or res judicata. Long contends that the original indictment could have been dismissed as time-barred, had the government not delayed the case and dissuaded Long from moving to dismiss the original indictment.

---

**12.** Mahoney adds that the flawed nature of the perjury counts further supports his application for severance. Whereas the court has addressed

the sufficiency of the perjury counts *supra* this contention is unavailing.

**664**

Thus, according to Long, the first and second superseding indictments should also be dismissed.

It is well-settled that jeopardy does not attach in a jury trial until the jury is empaneled and sworn. *See Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *United States v. Barta,* 635 F.2d 999 (2d Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981).[13] Until the defendant has been "forced to risk a determination of guilt," jeopardy does not attach. *See Serfass v. United States,* 420 U.S. 377, 391–92, 95 S.Ct. 1055, 1064–65, 43 L.Ed.2d 265 (1975); *Barta, supra,* 635 F.2d at 1004. Thus, even if Long had successfully moved to dismiss the original indictment, there is no doubt that jeopardy would not have, and has not yet, attached. Accordingly, because double jeopardy cannot be claimed until jeopardy has attached, *see Barta, supra,* 635 F.2d at 1004, Long's motion to dismiss on double jeopardy grounds is denied.

 Long's invocation of issue and claim preclusion is also unavailing. Initially it should be noted that the double jeopardy clause of the fifth amendment protects, *inter alia,* the interests similar to those advanced by the preclusion doctrines, which are customarily applied in civil litigation. Nevertheless, even if civil preclusion principles were to apply, Long's argument misses the mark. As to claim preclusion, it is apparent that there is no identity of claims between the original and the superseding indictments, which charge a more far reaching course of conduct than the original indictment. Further, as to issue preclusion, the only issue that *could* have been raised with respect to the original indictment was the timeliness. The standard for issue preclusion, however, is that issues *actually litigated* cannot be relitigated. Whereas the issue of guilt or nonguilt was not litigated, even under the most expansive and creative reading of pre-

clusion doctrine, Long's argument would fail.

Finally, Long contends that the government has acted improperly and therefore the indictment should be dismissed under the reasoning of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). This accusation of government misconduct is conclusory to say the least. Long does not specify the discovery abuses perpetrated by the government in this case. There is absolutely no indication that the government has suppressed any exculpatory evidence, and none is cited by Long. The court finds that Long's allegations of government misconduct are at best unsubstantiated and at worst groundless and frivolous.

### 2. *Motion to Suppress Audio Tapes*

 Between December 4, 1982 and February 1, 1983 the Federal Bureau of Investigation conducted court authorized electronic surveillance of Jesse Hyman and Melvyn Cooper in Resource Capital. The government intends to introduce some of these tapes at trial. Long contends that the sealing provisions of 18 U.S.C. § 2518 have been violated in this case, and accordingly § 2518(8)(a) precludes their use at trial.

Section 2518(8)(a) requires that tapes produced as a result of a court authorized tap be sealed immediately after the period of authorization expires. This section further provides:

"The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure or the contents of any wire, oral, or electronic communication or evidence derived therefrom under [Section 2517(3) ]."

Long does not question that the tapes were originally sealed properly. Defendant's contention is that after the tapes

---

**13.** In a nonjury trial, jeopardy attaches when the first witness is sworn. *See* LaFave & Israel, Criminal Procedure § 24.1 at 64 (citing *Serfass*

*v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)).

were unsealed for use in the trial of *United States v. Rotundo*, S 84 Cr. 479 (LBS), there was no subsequent resealing order. Such an order, however, is not required under the terms of the statute. The section requires the original seal be present or an adequate explanation for its absence. In this case, the tapes were sealed at the completion of the trial pursuant to Judge Sand's order, and they remain sealed. *See* Affidavit of Special FBI Agent David B. Stone.

The sequence of events leading to the current condition and location of the tapes provides adequate explanation as to why the *original* seal is not on the tapes. Moreover, it is apparent that Judge Sand's orders and the actions of the tapes' custodians were adequate to further the statutory objective of minimizing the opportunity for tampering. Accordingly, the court finds no violation of Section 2518(8)(a) and denies Long's motion.

### 3. *Remaining Motions*

■ Both Mahoney and Long have requested a bill of particulars and additional discovery. Mahoney's motion is facially defective. Rule 3(d) of the Local Criminal Rules of the Southern District provides:

> No motion described in this subparagraph [i.e., one addressed to a bill of particulars or answers to discovery and inspection] shall be heard unless counsel for the moving party files with the court simultaneously with the filing the moving papers an affidavit certifying that said counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issue raised by the motion without the intervention of the court and has been unable to reach such an agreement. Such affidavit shall specify the time when, the place where and the duration of the said conference. If part of the issues raised by motion have been resolved by agreement, the affidavit shall specify the issues so resolved and the issues remaining unresolved.

Mahoney's counsel have not submitted such an affidavit in conjunction with its moving papers. Accordingly, Mahoney's motion for a bill of particulars and discovery must be dismissed as not ripe for determination.

■ Long's counsel has submitted what purports to be a Rule 3(d) affidavit attached to his moving papers. This affidavit, however, does not satisfy all the requirements of Rule 3(d). The affidavit does not specify the particulars of each meeting with the government as required. Moreover, the affidavit does not set forth details of the meetings with the government as required by Rule 3(d). Finally, the affidavit does not set forth the issues that have been amicably resolved and those that have not been resolved. Perhaps more important, the government states in its memorandum that Long's counsel has not conferred with the government since its letter of March 17, 1988 setting forth the government's position with respect to particulars. Accordingly, whereas the court finds that Long's counsel has also failed to satisfy the requirements of Rule 3(d), Long's motion is likewise dismissed.

Long also seeks an order directing the government preserve and produce at the appropriate time all material subject to disclosure under 18 U.S.C. § 3500. Because the government has agreed to preserve all such material and to produce it sufficiently in advance of the testimony of relevant witnesses, the motion is dismissed as moot.

■ Long has also requested a hearing to determine the audibility and authenticity of the tapes that the government intends to introduce at trial, as well as the accuracy of the transcripts. The appropriate procedure to determine the admissibility of an audio tape is to conduct a hearing outside the presence of the jury. *See United States v. Bryant*, 480 F.2d 785 (2d Cir. 1973). Accordingly, Long's request for a hearing is granted. The hearing is scheduled for September 27, 1988 at 2:00 p.m.

Long has moved for an order discharging John J. Breslin as his counsel. The motion

is granted without opposition. Mr. Breslin is hereby relieved.

## CONCLUSION

The court hereby denies all of defendants' motions except as otherwise stated herein:

1. Mahoney's motion to dismiss Count 5 of the indictment is granted with respect to the testimony before the grand jury regarding repayment of a loan to Sterling National Bank;

2. Mahoney's motion to dismiss Count Three of the indictment for lack of venue in this district is granted; thus, absent a waiver by Mahoney Count Three of the indictment is dismissed;

3. Long's motion to discharge John J. Breslin as counsel is granted;

4. Long's request for a hearing to determine the audibility and authenticity of the tapes to be introduced at trial and the accuracy of the transcripts is granted, and accordingly a hearing is scheduled for September 27, 1988 at 2:00 in courtroom 1105;

5. Defendants' motions for additional discovery and a bill of particulars is dismissed pursuant to Local Criminal Rule 3;

6. Long's motion for an order directing the government to preserve and produce at the appropriate time all material subject to disclosure under 18 U.S.C. § 3500 is dismissed as moot, in light of the government's consent to comply with that request.

SO ORDERED.