**UNITED STATES of America**

v.

**Melvin Augustus HODGE, Defendant.**

**No. 82 Cr. 0603 (EW).**

United States District Court,
S.D. New York.

Feb. 1, 1983.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for United States of America; Peter B. Sobol, Asst. U.S. Atty., New York City, of counsel.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for defendant; Frank H. Wohl and Alan L. Doochin, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant, Melvin Augustus Hodge, moves to dismiss the indictment against him on the ground that his ability to defend has been "severely prejudiced" by the government's delay in obtaining the indictment, thereby depriving him of his right to a fundamentally fair trial. The motion is based upon the Speedy Trial provision of the Sixth Amendment, the Due Process clause of the Fifth Amendment, and Fed.R. Crim.P. 48(b).

The indictment contains 17 counts. The first charges that Hodge and others engaged in a conspiracy during the period from February 1978 through June 1978 to forge and negotiate United States Treasury checks which they knew had been stolen from the mails and deposited in, accounts maintained in Hodge's name and that of Melhod Construction Inc. at a Citibank branch in the Bronx, New York. Counts 2 through 15 charge possession of 14 such checks, each dated on various dates in April

and May 1978. Counts 16 and 17 charge that the defendant forged the endorsement of the payees on two checks, each dated May 1, 1978.

The indictment was not returned until September 3, 1982, more than four years after the commission of the alleged crime. A superseding indictment was filed on October 18, 1982. The first accusation was made on August 24, 1982, when a criminal complaint was filed before a magistrate.

Preliminarily, it is noted that the defendant's claim to relief under the Sixth Amendment and Rule 48(b) based upon the pre-indictment delay must fail since neither provision comes into play absent an indictment, information or an arrest to answer a criminal charge. Until one of these events occurs, "a citizen suffers no restraints on his liberty and is not the subject of accusation: his situation does not compare with that of a defendant who has been arrested and held to answer."[1]

The defendant seeks to overcome the force of this concept upon a contention that his interrogation on three separate occasions in 1978 and 1979 by postal service inspectors and secret service agents in the course of their investigation when he was photographed, fingerprinted and gave handwriting samples was the functional equivalent of an arrest and detention. The claim is without substance. The interrogation imposed no restraints upon his liberty and did not subject him to public accusation. Indeed, our Court of Appeals has held that "even if there might be circumstances in which 'accusation' for speedy trial purposes could be said to commence before actual arrest or indictment, they are not represented merely by a government investigation . . .".[2] The one case relied upon by

---

1. *United States v. Marion,* 404 U.S. 307, 321, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971). *See also United States v. Birney,* 686 F.2d 102, 105 (2d Cir.1982). In *Marion,* the Court held that Fed. R.Crim.P. 48(b) as well as the Speedy Trial clause of the Sixth Amendment is limited to

post-arrest situations. 404 U.S. at 319, 92 S.Ct. at 462.

2. *United States v. Elsbery,* 602 F.2d 1054. 1059 (2d Cir.), *cert. denied,* 444 U.S. 944, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979).

the defendant, *United States v. McLemore,*[3] is readily distinguishable and clearly inapposite. There, the defendant, an escaped federal prisoner, was arrested by federal authorities, held as a marshal's prisoner, and was in "actual restraint" pending the lodging against him of the escape charge. Here, Hodge was not placed in custody prior to the indictment, nor was he informed that he was under arrest or accused of the crime up to the filing of the complaint which was soon followed by the return of the first indictment.

The indictment having been returned within the statutory limitation period, which provides the "primary guarantee against bringing overly stale criminal charges,"[4] the only basis for relief upon defendant's claim of prejudice by reason of pre-indictment delay is a limited due process claim under the Fifth Amendment. The due process inquiry is two-pronged. As articulated in *United States v. Lovasco,* it "must consider the reasons for delay as well as the prejudice to the accused."[5] Our Court of Appeals, citing *Lovasco,* has held that the defendant has a heavy burden to establish a violation of due process, and to prevail, there must be a "showing of actual prejudice to the defendant's right to a fair trial *and* unjustifiable government conduct."[6]

First, as to the reasons for delay. It is evident that the secretive nature of the crime charged, the pervasiveness of the conspiracy, the number of substantive offenses alleged, the usual absence of direct evidence, and the difficulty of detecting other alleged members of the conspiracy all readily establish that an extensive investigation was required before investigative and prosecutorial officials could in good faith decide that there was sufficient evidence to warrant prosecution and presentation of the matter to a grand jury.[7] The investigation into the alleged theft of 14 checks, each an independent crime, and the additional and separate crime of forging and uttering the stolen checks necessarily was a time-consuming endeavor. Moreover, the government's investigation was not limited to the checks that were the subject of the indictment but included 81 others, totalling almost one hundred that required handwriting exemplars and their analysis as well as interrogation of individuals other than the defendant. The scope of the investigation engaged the services of two separate agencies, the Postal Service and the Secret Service. The postal service activities were directed to attacks on, and thefts from, postal relay boxes, whereas the secret service investigation concerned itself with the embezzlement of treasury checks brought to the United States Treasury Department's attention as claims were forwarded to it by other agencies which had issued such checks to payees who claimed they had never received their checks.

The defendant charges that even making allowance for the time-consuming factors, the government delayed the investigation beyond the time reasonably required to obtain an indictment. He argues that the investigation had been concluded by the end of 1979, during the course of which he had, as already noted, been interrogated by secret service agents and postal service inspectors, had submitted handwriting exemplars, and had been photographed and fingerprinted; also, that by 1979 the au-

---

3. 447 F.Supp. 1229 (E.D.Mich.1978).

4. *United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966) (cited in *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977)).

5. 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977).

6. *See United States v. Elsbery,* 602 F.2d 1054, 1059 (2d Cir.1979) (emphasis in original); *but see United States v. Mays,* 549 F.2d 670, 677

(9th Cir.1977) (suggests a balancing test based upon the facts of each case).

7. *See United States v. Lovasco,* 431 U.S. 783, 790–91, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977) ("[P]rosecutors do not deviate from 'fundamental conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed, it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause.").

thorities had examined some 95 checks to determine whether the defendant wrote any endorsements appearing thereon. His contention assumes that he was the sole suspect. The government points out that the separate investigations which involved other persons were ongoing and continued until early 1982 when they were consolidated. The area from which the checks were stolen from the relay boxes and the method of cashing suggested a uniform pattern of conduct by a number of individuals rather than the isolated activity of a single wrongdoer. The investigations were prolonged because efforts to trace and locate the persons who deposited the alleged forged instruments and those who stole the checks were necessarily time consuming. The most that can be charged against the prosecution is failure to move more expeditiously. Perhaps the investigations could have moved with greater celerity. However, even if one were to accept that the government was negligent, that furnishes no basis for dismissal of an indictment, absent a showing that as a result a defendant will be deprived of his right to a fundamentally fair trial.[8]

■ We now consider the defendant's claim of prejudice. To prevail on this issue, the proof must be "definite and not speculative,"[9] and he must demonstrate how the factors relied upon are prejudicial to him. The defendant alleges that some time after 1979 and before the return of the indictment in September 1982—a span of three years—he either had lost or there had been stolen from his car bank records, checks and other documents that are the subject of his prosecution and that "it is difficult to remember what occurred more than four years ago." Other than defendant's assertion, no evidential proof supports his claim of lost or stolen records. It is odd that the claim is in the alternative. It is significant

that no police record has been submitted indicating that the defendant reported the theft of his car, and if he did what claim, if any, was made that any of the car's contents also were the subject of the theft. Not only has Hodge failed to carry his burden that in fact records were lost or stolen but he has not demonstrated in what respect the records he asserts were lost or stolen can assist in his defense. Further, the government produced to Hodge during the pre-trial phase of this case all records which it has obtained from Citibank.

A reading of the indictment suggests that to prevail the government must establish with respect to the conspiracy charge that there was systematic stealing of checks from the relay boxes and that the defendant, aware of the conspiracy's purpose, was an intentional member thereof; with respect to the substantive counts, that the checks were stolen and that the defendant with such knowledge negotiated them; and further with respect to other counts, that he forged the payees' signatures. Just how alleged lost or stolen records, whatever their nature, would aid in resisting the government's proof is not explained.

Defense counsel asserts that at a recent meeting a representative of Citibank informed government and defense counsel that certain documents, including several deposit slips for checks referred to in the indictment could not be located and other documents relating to the Melhod account are not legible. If this is so, any prejudice is likely to be visited upon the government, which has the burden of proof and not the defendant.

As to his generalized statement that it is difficult to remember what happened four years ago, he fails to specify the matters as to which there is a lack of recall or their relationship to his defense. Moreover, such a claim of lapse of memory has not gained

---

**8.** Thus far, our Court of Appeals has not passed upon the propriety of dismissing an indictment because of prosecutorial negligence.

*See United States v. Birney,* 686 F.2d 102, 105 n. 1 (2d Cir.1982).

**9.** *United States v. Birney,* 686 F.2d 102, 106 (2d Cir.1982).

ready acceptance by our Court of Appeals.[10] This is not a case where a defendant, unaware that an inquiry or investigation is in progress, is suddenly confronted by an indictment on the eve of the expiration of the statute of limitations. The questioning of Hodge on three separate occasions in 1978 and 1979 necessarily made known to him the subject matter of inquiry as related to his alleged involvement and his affidavit indicates as much. According to his affidavit, the investigation left him "apprehensive" and "embarrassed." Thus, it is hardly likely that the subject matter and details of the inquiry are now beyond his recall. To the contrary, it is more likely they are indelibly impressed upon him.

In sum, not only is there no showing that the delay is prejudicial, but even if there had been a showing that by the lapse of time "the defense might have been somewhat prejudiced," [11] it does not reach the point where the defendant's right to due process of law has been violated. Finally, there has been no claim, much less any proof, that any delay was due to a prosecutorial purpose to secure a tactical advantage or to interfere in any respect with the defendant's right for a fair trial, which by itself is sufficient to warrant a denial of this motion.[12] Accordingly, the motion to dismiss the indictment for pre-indictment prejudicial delay is denied.

---

**10.** *See, e.g., United States v. Rubin,* 609 F.2d 51, 66 (2d Cir.1979), *aff'd.,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *United States v. Elsberry,* 602 F.2d 1054, 1057 (2d Cir.), *cert. denied,* 444 U.S. 944, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979) and cases cited therein.

**11.** *United States v. Lovasco,* 431 U.S. 783, 796, 97 S.Ct. 2044, 2052, 52 L.Ed.2d 752 (1977).

**12.** *See* notes 6 and 8 above.