OPINION OF THE COURT
Rena K. Uviller, J.
Defendant has been indicted for the crime of first degree *238 rape which allegedly occurred on May 12, 1990. He was not arrested until four years and one month later, on June 3, 1994. The felony complaint was filed the next day, an indictment was returned on June 15, 1994, and the People were ready for trial shortly thereafter.
Defendant claims that the 49-month delay between the crime, on the one hand, and his arrest and the filing of the complaint, on the other, has deprived him of a prompt prosecution guaranteed by the Due Process Clauses of the State and Federal Constitutions.
Properly, defendant does not rely upon the statutory right to speedy trial, inasmuch as the New York statute addresses the delay between the filing of an accusatory instrument and the People’s readiness for trial; it does not govern a situation such as this, where the delay occurs between the crime and the initiation of the arrest and prosecution. (CPL 30.20, 30.30.) That is to say, our speedy trial statute, while it confers the right to a prompt resolution of a criminal accusation, does not require the State to accuse promptly.
FACTS
The undisputed facts are these: The complainant, a Canadian national, was 19 years of age at the time of the events in question and then resided in Manhattan with her mother and her stepfather. The parents often frequented a neighborhood tavern where they had occasionally encountered the defendant, another patron of the establishment. On the night of the alleged crime, the parents invited defendant to return to their Upper East Side apartment to continue socializing and drinking.
The complainant, who was home at the time, retired to her bedroom early, her stepfather having passed out, intoxicated, on the living room couch. Complainant’s mother and defendant had also drunk to excess.
What occurred thereafter is seriously disputed. The complainant has alleged that the defendant entered her bedroom, awakened her and forcibly raped her, threatening to harm her and her parents if she resisted. The defendant, who testified before the Grand Jury in June 1994, claims that the complainant voluntarily had sexual relations with him.
A complaint was made to the police the following morning by complainant and her mother, naming defendant as the assailant and providing his address and place of employment. *239 Within the next two weeks detectives interviewed defendant at his home twice and at least once at his place of employment. Defendant agreed to meet with the detectives next on August 8, 1990, some three months after the event, but he did not appear for the appointment. On August 10th, the officers telephoned defendant’s mother who advised that her son had gone for a visit to the Philippines and would return in several weeks. When the officers telephoned defendant’s employer in September 1990, he confirmed defendant’s visit to the Philippines and advised that defendant was due back to work shortly.
As the People have candidly conceded, the police did nothing regarding the investigation after September 1990, until they arrested the defendant more than four years later. Indeed, no further investigation was necessary, inasmuch as the complainant and her parents had been fully interviewed and defendant had been identified immediately and had been located and interviewed at least three times within weeks of the crime. No physical or other forensic evidence was sought or obtained. Further, the People concede that there is no explanation whatever for the delay. There is no claim that the complainant or her parents were unreachable or uncooperative or that any further information or evidence was necessary for an arrest or indictment.
Moreover, defendant has never concealed his whereabouts or contributed to the delay in any way. Although his visit to the Philippines was disputed it is not contested that, apart from that alleged sojourn, he continued living with his mother at the same address for three years until he married and moved to another address where he has resided for the past year. He has had the same job for the past 12 years. He has not been arrested before or since the date of the alleged crime.
Finally, at the hearing conducted in regard to defendant’s motion to dismiss the indictment, he requested an ex parte, in camera opportunity to demonstrate the prejudice he has suffered as a consequence of the delay. I granted the request so that defendant would not be required to reveal his defense strategy to the prosecutor prematurely. As the record of that sealed ex parte hearing demonstrates (and which is available for appellate review), I concluded that defendant has demonstrated no prejudice from the delay. This past June he testified at length before the Grand Jury about what transpired in complainant’s bedroom more than four years earlier; his ability to recall the event or to establish his whereabouts is *240 not in issue. His remaining claim of prejudice is without merit. (The defense specification of prejudice and my conclusions are contained in the sealed record of Sept. 13 and Nov. 14,1994.)
DISCUSSION
The Legislature, by its Statutes of Limitations, has prescribed the time within which the State must initiate a prosecution following the detection of a crime. (CPL 30.10.) Once the prosecution has begun (for example, by the filing of a felony complaint) the People must be ready to try the matter within the time constraints of CPL 30.30. Since the Statute of Limitations for first degree rape is five years (CPL 30.10 [2] [b]), this prosecution is not time barred in' that sense, notwithstanding the 49-month delay. Nor is it barred by our statutory speedy trial provisions, since the People were ready to proceed to trial shortly after the defendant’s arrest and the filing of the felony complaint. (See, CPL 30.30 [1] [a].)
The troubling question is whether the unjustifiable failure to take any action against the defendant for more than four years is so fundamentally unfair as to have deprived him of due process of law, even though neither the Statute of Limitations nor the speedy trial statute has expired.
For Federal constitutional purposes, the delay occurring before either arrest or indictment (preaccusation delay, such as occurred here) is analyzed differently from delay in bringing the accused to trial after arrest or indictment. Postaccusation delay is measured against the Sixth Amendment right to a speedy trial (Barker v Wingo, 407 US 514; see also, People v Taranovich, 37 NY2d 442, 444-445; People v Singer, 44 NY2d 241, 252).[1] Delay occurring before either arrest or indictment is scrutinized under the lens of due process. (United States v Marion, 404 US 307; United States v Lovasco, 431 US 783; People v Singer, 44 NY2d, at 252, supra.)
Some of the same considerations in evaluating postaccusation delay apply to preaccusation delay, for example, whether *241 the government has shown good cause for its inaction. (See, United States v Lovasco, supra.) The principal distinction, however, is that in order to prevail on a Federal due process claim of pre-accusation delay, the accused must demonstrate that he has suffered actual prejudice as a consequence of the government’s inaction. (United States v Marion, supra; United States v Lovasco, supra.) This is because delay occurring before the government initiates a prosecution involves neither the public obloquy attendant upon official accusation or pretrial detention — the chief concerns of delay occurring after accusation. Accordingly, the failure to bring timely charges rises to a Federal due process violation only upon a showing that the passage of time actually impaired the defendant’s ability to mount a defense. (United States v Marion, supra; United States v Lovasco, supra; People v Singer, 44 NY2d 241, 252, supra.)
Under New York law the distinction between the standards governing pre- and postaccusation delay has been less clear. (See, e.g., People v Staley, 41 NY2d 789.) It was obliterated entirely by the Court of Appeals in People v Singer (44 NY2d 241, supra), which reversed a murder conviction because of a 42-month lapse between the crime and the defendant’s arrest and indictment.[2] Although no Statute of Limitations applies to murder, the Court observed that even where such a statute does apply and has not expired, excessive delay in initiating a prosecution may be so unfair as to violate due process. The relevant Statute of Limitations is, to be sure, the Legislature’s presumptive determination of timeliness — its expression of the fair and reasonable period within which to initiate a prosecution and considerable deference is due it. (See, United States v Marion, supra, 404 US, at 321-323.) But Singer made clear that the Statute of Limitations is not dispositive in evaluating a due process claim of preaccusation delay.
The most significant aspect of Singer (supra) was its declaration that in regard to a preaccusation delay, due process afforded by the State Constitution is broader than that provided by the Fourteenth Amendment. The Court declared that there should be no distinction between standards used to assess the State’s inaction occurring before, as opposed to after accusation. Specifically, and most controversially (see, *242 dissenting and concurring opn, Gabrielli, J.), Singer read earlier cases to mean that lack of prejudice to the accused in preparing his defense, even in a case of preaccusatory delay, was not a bar to dismissal; that excessive and unwarranted inaction in arresting and charging a suspect is intolerable even though he has suffered no harm as a consequence. "[I]n a proper case,” the Court of Appeals held, "a lengthy and unjustifiable delay in commencing the prosecution may require dismissal even though no actual prejudice to the defendant is shown” (People v Singer, 44 NY2d, supra, at 253-254 [emphasis added]).
Accordingly, after Singer (supra), New York courts have tended not to distinguish between preaccusatorial delay, such as occurred here, and delay incurred after a suspect has been charged and/or arrested. There is no fine distinction between standards governing the two and a showing of prejudice to the accused is not necessarily required in either event. (See, e.g., People v Rodriguez, 205 AD2d 417 [dismissing the indictment because of a 21-month delay in initiating the prosecution although no prejudice to the defendant was shown].) Rather, certain features, depending on their combination and gravity, determine whether a delay in prosecution amounts to a due process violation. (People v Prosser, 309 NY 353, 357.)
First, have the People offered a good reason for the delay? For example, were the police in pursuit of additional information necessary for a successful prosecution? Did they have sufficient evidence against the accused shortly after the crime occurred or was the investigation ongoing? If time was needed to gather evidence, the delay may be excusable. (See, e.g., People v Lesiuk, 81 NY2d 485; People v Brown, 209 AD2d 233; People v Rosado, 166 AD2d 544; People v Curro, 161 AD2d 784.)
Next, did the prosecution seek and gain some unfair tactical advantage from the delay? (See, e.g., People v Singer, 44 NY2d 241, supra, where defendant claimed that the police waited until he was no longer represented by counsel so that they could elicit a waiver of his Miranda rights and a confession from him.)
Did the defendant contribute to delay? Was he eluding apprehension or discouraging others from cooperating with the investigation? Was defendant seeking a tactical advantage from the passage of time? Clearly, if the defendant contributed to the delay his complaint about it is less persuasive. *243 (See, People v Singleton, 195 AD2d 339; People v Maya, 173 AD2d 327.)
Was the defendant under a cloud during the period of delay? Did he suffer public obloquy or prolonged anxiety— which can stem from private police interrogation, even if there has been no formal public accusation? (See, People v Singer, supra.) In other words, a suspect is entitled to closure, one way or the other, after a reasonable period of time.
How serious is the crime? This factor can cut both ways. If the crime is violent or otherwise especially egregious, the police and prosecutor may be excused for taking extra time to gear up for an arrest or indictment. On the other hand, the public has an interest in the expeditious investigation, apprehension, and prosecution of dangerous individuals. (See, People v Johnson, 38 NY2d 271, 276.) In some instances, delay may be more tolerable for less serious and/or nonviolent crimes.
How long was the delay? A relatively brief, albeit unwarranted or unexplained, delay may not offend due process.
Finally, was the defendant prejudiced by the delay? A pro forma claim of prejudice will carry no weight. (People v Papa, 143 AD2d 1058; People v Bolling, 142 AD2d 733.) Wholly apart from incarceration or public obloquy upon arrest or indictment (which do not apply to preaccusation delay), an actual demonstration of prejudice to the accused may weigh heavily in his due process claim. It can flow most obviously from a loss of witnesses, faded memories, or other demonstrated inability to mount a defense due to the passage of time. The ability to demonstrate prejudice, as already noted, however, is not the sine qua non of a successful due process claim. (See, e.g., People v Rodriguez, 205 AD2d 417, supra.)
Applying these principles to the instant case, the nature of the crime for which defendant is accused is grave and the delay does not appear to have been for the purpose of gaining any tactical advantage. (Cf., People v Singer, supra.) Yet the police and prosecution waited more than four years to take any action, without any reason or justification whatever for their inattention. No further investigation was required; no more evidence was being sought. The People have not claimed that their witnesses were unavailable or uncooperative.
Nor did the defendant contribute to the delay in any way. He has been living at either of two known addresses since the time of the alleged crime and has been working at the same place for 12 years. He has not been avoiding apprehension and *244 indeed was interviewed by the police several times in the months following the crime.
Defendant’s inability to demonstrate concrete prejudice from the delay, as already noted, is not dispositive. And although he has not lived in a state of continual anxiety since the police last questioned him, that is because official inaction gave him every reason to believe that there was no basis for prosecution; that the matter was concluded and that he could get on with his life.
In the end I am left with the fact that the extent of the delay in this case has been extraordinary. Indeed, while few cases of preaccusation delay have resulted in dismissal of the indictment, especially where no actual prejudice to the defendant is shown (cf., People v Rodriguez, supra), in few other cases has the delay been this long. Even in Singer (supra), which involved a brutal murder, the delay was less protracted than it has been here.
Based upon the foregoing, I conclude that the wholly unwarranted 49-month delay in proceeding against defendant has deprived him of due process of law. Accordingly, the indictment is dismissed.

. CPL 30.30, though denominated a "speedy trial” statute, is really a "readiness” rule. It requires that the People be ready for trial within a prescribed time after commencement of the action; it does not insure that the defendant be tried speedily. Thus, even if the People are ready to proceed within the time strictures of CPL 30.30 but the delay has been excessive (albeit not chargeable to the People), the defendant may be entitled to a dismissal pursuant to CPL 30.20. (People v Anderson, 66 NY2d 529, 537.)

. The defendant was the sole suspect as soon as the body was discovered. The Court of Appeals remanded for a hearing to determine the cause of the delay, inasmuch as defendant, who was incarcerated on an unrelated matter, was available for prosecution during the entire 42 months.