OPINION OF THE COURT
James A. Yates, J.
Defendant, Ulysses McCrorey, has moved to dismiss the *76 indictment, charging him with murder in the second degree, claiming that he has been denied the right to a prompt prosecution guaranteed by the Due Process Clauses of the New York and Federal Constitutions. In this case, there was a delay of more than 16 years between the time Mr. McCrorey was first identified as a suspect in the killing of Billy Giles on February 7, 1982, and the time he was ultimately arrested and indicted for the crime. The People argue that the delay was caused by the defendant’s flight from New York to Maryland, that they have acted diligently and that Mr. McCrorey is not prejudiced by the delay.
The hiatus in this case is remarkable for its unusual length. As well, the court is not unmindful of the apparently unblemished and arguably productive life the defendant has maintained in the interim. However, the issue before the court is a narrow one: Has the defendant been deprived of due process by the 16-year delay between his identification as a suspect and his arrest?
Findings of Fact
On February 7, 1982, Billy Giles was fatally stabbed in a room next to that occupied by Mr. McCrorey’s father in the single-room occupancy building where they both had lived. Within hours of the stabbing, Ulysses McCrorey was identified as the sole suspect. The defendant’s father and several neighbors were interviewed concerning Mr. McCrorey’s whereabouts. The next day, two police officers were assigned to maintain surveillance of a methadone clinic in Harlem that treated the defendant. As well, police officers visited an address where they believed the defendant may have gone but they did not find him at that location. At that point, a “wanted card” for the defendant was issued, advising other New York City Police Department personnel that Mr. McCrorey was sought in connection with the killing.
Based upon the interview with the defendant’s father, the police believed that Mr. McCrorey may have fled to Baltimore-, Maryland. On March 21, 1982 the New York City Police Department (NYPD) sent the Baltimore police homicide unit the defendant’s last known address in Maryland as well as photographs of the defendant to see if they had any information of a prior record for the defendant. The Baltimore police had no information regarding Mr. McCrorey. On January 25, 1983, in a second effort to track the defendant, the NYPD sent *77 additional information about the defendant, including his Social Security number, to the Baltimore Police Department but again they were unable to obtain any information regarding his location. On January 26, 1983 the NYPD contacted the New York City Human Resources Administration and were informed by agency representatives that the defendant was no longer receiving public assistance checks. On July 13, 1983 the NYPD repeated their phone call request for information from Baltimore police but again received no information.
Sometime in 1983 the NYPD contacted a fugitive unit of the Federal Bureau of Investigation (FBI). An FBI agent visited the defendant’s last known Maryland address. In addition, the FBI agent obtained the defendant’s medical records and checked two additional addresses noted in the records — all without success. It appears that no further investigatory work took place until 1991. In 1991 a new detective was assigned to the case and the NYPD ran a “Finest” inquiry with the FBI which merely provided an address which had previously been investigated without success. In 1993 the NYPD ran another “Finest” check with the FBI which yielded no new information. In 1997 the NYPD performed a “Faces of the Nation” check. This computer inquiry, which accesses a variety of new data sources, first became available to the police in 1997. From this search, the police obtained three addresses. Mr. McCrorey was located at one of them. Upon being advised that he was wanted by New York officials, the defendant voluntarily accompanied the Baltimore police officers to the station where he was placed under arrest.
An indictment was first filed in this case on December 30, 1997. No previous complaint had ever been presented.
Conclusions of Law
Because of the protracted 16-year preindictment delay, defendant argues that he has been deprived of due process and speedy trial rights guaranteed by the Federal and State Constitutions. Defendant contends that the police did not exercise due diligence in their efforts to locate him. The defendant also claims that the passage of time has prejudiced him in presenting an adequate defense. His memory has been impaired and potential defense witnesses may not be available to recall the events related to the evening of the murder.
The People argue that the police acted with sufficient diligence, and that Mr. McCrorey has not been deprived of his right to a prompt prosecution.
*78 Delay between the crime and the indictment is wholly irrelevant under the Speedy Trial Clause of the Sixth Amendment. (United States v Marion, 404 US 307, 320 [1971].) Similarly, in a case where a murder is charged, the law imposes no Statute of Limitations.[1] Defendant must therefore base his claim on the Due Process Clause, which has “a limited role * * * in protecting against oppressive delay’. (United States v Lovasco, 431 US 783, 789 [1977].) Notwithstanding this limited right, excessive preindictment delay may, in some situations, deny a defendant the right to due process under the Fifth Amendment. (US Const 5th, 14th Amends; United States v Lovasco, 431 US 783, 789 [1977]; United States v Marion, 404 US 307 [1971].) To establish a due process violation stemming from preindictment delay, a defendant bears a heavy burden of demonstrating “actual prejudice to the defendant’s right to a fair trial and unjustifiable Government conduct.” (United States v Elsbery, 602 F2d 1054, 1059 [2d Cir 1979]; see, United States v Lovasco, 431 US, supra, at 789-790; United States v Marion, 404 US, supra, at 324-325; United States v Romero, 54 F3d 56, 62 [2d Cir 1995] [stating that a defendant must show “that the delay violated ‘fundamental conceptions of justice’ ”, quoting United States v Lovasco, 431 US, at 790].)
The standard for actual and substantial prejudice is “ ‘fairly stringent’ ”. (United States v Castellano, 610 F Supp 1359, 1385 [SD NY 1985].) Asserting actual prejudice resulting from preindictment delay requires a defendant to particularize his allegations. “The passage of time, and the attendant loss of evidence and dimming of witnesses’ memories, is insufficient by itself to show prejudice.” (United States v Castellano, 610 F Supp, at 1385, citing United States v Elsbery, 602 F2d, supra, at 1059; see also, United States v Harrison, 764 F Supp 29, 32 [SD NY 1991].)
The New York State due process requirement of a prompt prosecution has been held to be broader than the right to due process recognized in the Federal Constitution. (See, NY Const, art I, § 6; People v Singer, 44 NY2d 241, 253 [1978]; see also, People v Staley, 41 NY2d 789, 791 [1977].) State courts have analyzed preindictment delay claims by considering the factors relevant to constitutional speedy trial claims, consistent with the Court of Appeals refusal to draw fine distinctions between due process and speedy trial standards. (See, People v Singer, *79 supra, at 253.) Singer held that a lengthy and unjustifiable delay between the occurrence of the crime and arrest will, in certain circumstances, violate a defendant’s due process rights under the State Constitution even without a showing of prejudice. (Supra; see also, People v Taranovich, 37 NY2d 442, 447 [1975] [“(W)here * * * the * * * delay is great enough there need be neither proof nor fact of prejudice to the defendant”].) The Singer Court held that in order to establish a violation of due process, it is necessary to show that the prearrest delay is unjustifiable. An untimely prosecution may be subject to dismissal even if a defendant has not been formally accused, restrained or incarcerated for the offense. Generally, in New York, when there has been extensive delay, the burden shifts to the People to establish good cause. (People v Lesiuk, 81 NY2d 485 [1993]; People v Singer, 44 NY2d, at 254; People v Staley, supra.)
In particular, in cases involving a missing defendant, the People must demonstrate that “diligent efforts” were made to locate the defendant. (People v Andine, 214 AD2d 373 [1995].) In Andine, a four-year-and-seven-month preindictment delay required dismissal of an assault indictment where police efforts had been minimal: officers canvassed the neighborhood four times, but then closed the case after only six weeks, telling the victim to call if she saw the defendant. The defendant was arrested repeatedly on other charges, but a warrant was never lodged to bring him to court on the assault charge. The demonstrated lack of diligence mandated dismissal. (Supra.)
Taranovich articulated five factors to be balanced in applying a test of reasonableness: (1) the length of the delay; (2) the reason for the delay; (3) the seriousness of the underlying offense; (4) the degree of actual prejudice to the defendant; and (5) whether the defendant has been incarcerated. (People v Taranovich, 37 NY2d 442 [1975], supra; see also, People v Bryant, 65 AD2d 333 [1978], appeal dismissed 46 NY2d 1037 [1979]; People v Guzman, 163 Misc 2d 237, affd 227 AD2d 219 [1996].)
Following Taranovich (supra), the People have met their burden in cases involving arguably excessive delays by demonstrating good faith and an objectively rational explanation for the delay. For instance, a six-year preindictment delay was excused in a case involving a murder indictment where the police were found to be “reasonably diligent” in locating the defendant and there was “no indication of bad faith by law enforcement or specific prejudice to defendant.” (People v Su *80 ero, 235 AD2d 357 [1997].) To the same effect, an 11-year delay was reasonable when it was “based upon a good-faith determination by the police to defer prosecution until statements of defendant’s accomplice in an unrelated case could be corroborated”. (People v Frazier, 159 AD2d 1017, 1018 [1990], lv denied 76 NY2d 734 [1990], cert denied 498 US 873 [1990].) A nine-year delay in a case involving a murder indictment was excused upon a finding that “the investigation proceeded in good faith”. (People v Brown, 209 AD2d 233 [1994].)
Applying the Taranovich criteria to the case before the court, some factors are not in dispute. The seriousness of the crime is not in question: the defendant stands accused of a brutal murder. As well, there is no dispute that defendant has not been incarcerated or otherwise constrained. These two factors would seem to weigh against the defendant’s cause.
On the other hand, here, the length of the delay is admittedly extreme: this court’s research uncovered no case approaching the present preaccusatory lapse. As well, the People have offered no explanation as to why a case could not have been presented to a Grand Jury and an indictment drawn within days of the incident. There was no apparent reason to forestall accusation in need of further investigation. However, Taranovich (supra) drew no distinction between pre- and post-filing delay.[2] The People’s neglect in presenting the case to a Grand Jury has not demonstrably contributed to the delay nor prejudiced the defendant.[3]
The next factor to weigh is that of prejudice to the defendant’s ability to defend against the belated accusation. As noted earlier, Taranovich (supra) held that this factor is not dispositive but should be considered, “While, of course, it is not incumbent upon a defendant to show that he has been prejudiced by the delay in the commencement of his trial * * * a questionable period of delay may or may not be unreasonable depending upon whether or not the likelihood of the defendant’s acquittal has been effected thereby. For instance, if the delay *81 precipitated by the prosecution resulted in the defendant’s being unable to call certain witnesses, or if the duration of the delay was such that it might be expected that the witnesses would be less able to articulate exactly what had transpired, then the defendant would have a strong argument for dismissal of the indictment”. (Supra, at 446-447.)
However, despite generalized assertions of potential prejudice in this case, no loss of witnesses, opportunity to investigate or loss of memory has been demonstrated. The court can find no actual prejudice in the record.
As a final consideration of the Taranovich configuration, the court must weigh the length and justification for delay. A 16-year delay in indicting and prosecuting the defendant for this offense is unusually, if not uniquely, lengthy. Yet the delay was occasioned by the defendant’s flight to Maryland.[4] Unlike the situation in Andine (supra), efforts to trace and locate the defendant were frustrated, despite repeated efforts by the NYPD, the FBI and the Baltimore police.
An admittedly long lapse in the investigatory process occurred between 1983 and 1991 when a new detective was assigned. No explanation for this inattention has been provided. Although the delay is inexcusable, it does not necessarily demonstrate bad faith. There is no evidence that the People sought to, or did, gain any tactical advantage through deliberate delay. The most that can be asserted against the government is unintentional neglect. Police or prosecutorial negligence is not sufficient to establish a due process violation. “[M]ere inadvertence, by itself, is not a reason to dismiss the indictment * * * especially when the delay was not deliberate or motivated by tactical advantage to the prosecutor, and did not result in substantial prejudice”. (People v Cox, 188 AD2d 316, 317 [1992]; see, United States v Birney, 686 F2d 102, 105, n 1; United States v Oliver, 683 F Supp 35, 41 [ED NY 1988] [finding that while prosecution of the case was “anything but diligent”, the court could not find that the Government’s conduct violated due process]; United States v Hodge, 556 F Supp 139, 142, n 8 [SD NY 1983] [noting that Government negligence furnishes no basis for dismissal of the indictment absent a showing that the defendant will be deprived of the right to a fair trial].) The lack of diligence in this case does not rise to the level condemned in Taranovich and Andine (supra).
*82 The delay in this case, although unfortunate and, perhaps, unnecessary, has neither deprived Mr. McCrorey of his constitutional right to due process or to a fair trial.

. “ ‘[T]he primary guarantee against bringing overly stale criminal charges’ ” is the applicable Statute of Limitations. (United States v Marion, 404 US 307, 322 [1971], supra.)

. In Taranovich (supra) the Court, for purposes of its analysis, aggregated an 11-month delay from filing to arraignment with the two-and-one-half-year prefiling delay.

. An argument could be made that the issuance of an arrest warrant, following the filing of an accusatory instrument, would have been more effective than the “wanted” card in securing the attendance of the defendant. Similarly, it could be maintained that preservation of a witness’ testimony by early presentation to a Grand Jury would, in some way, help the defense as well as the prosecution. However, both arguments are, at best, speculative since nothing in the record would factually support either conclusion.

. The defendant has argued that there is no direct proof that he fled to avoid the charge. However, his sudden departure on the morning of the incident permits a fair inference that he did, in fact, flee the jurisdiction.